No. 25-6970
Oral Argument: April 13, 2026

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

HELEN ROE, a minor, by and through parent and next friend Megan Roe; et al.,

*Plaintiffs - Appellees*,

v.

DEBORAH JOHNSTON, in her official capacity as State Registrar of Vital Records and Interim Director of the Arizona Department of Health Services,

*Defendant - Appellant.*

*Consolidated with* **No. 25-6980**

HELEN ROE, a minor, by and through parent and next friend Megan Roe; et al.,

*Plaintiffs - Appellees*,

v.

DEBORAH JOHNSTON, in her official capacity as State Registrar of Vital Records and Interim Director of the Arizona Department of Health Services,

*Defendant - Appellee*,

v.

WARREN PETERSEN, President of the Arizona State Senate; STEVE MONTENEGRO, Speaker of the Arizona House of Representatives,

*Intervenor-Defendants - Appellants*.

On Appeal from the United States District Court
for the District of Arizona, No. 4:20-cv-00484

## INTERVENOR-DEFENDANTS - APPELLANTS' OPENING BRIEF

Justin D. Smith
Michael C. Martinich-Sauter
JAMES OTIS LAW GROUP, LLC
530 Maryville Centre Drive, Suite 230
St. Louis, Missouri 63141
(816) 678-2103
Justin.Smith@james-otis.com
*Counsel for Intervenor-Defendants - Appellants*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................... iii

INTRODUCTION ..............................................................................1

JURISDICTIONAL STATEMENT ........................................................2

ISSUES FOR REVIEW .......................................................................3

CONSTITUTIONAL AND STATUTORY AUTHORITY.........................3

STATEMENT OF THE CASE................................................................4

I.     Statutory and Regulatory Background .........................................4

II.    Factual and Procedural Background............................................5

SUMMARY OF ARGUMENT................................................................8

STANDARD OF REVIEW ...................................................................9

ARGUMENT ....................................................................................10

I.     Ariz. Rev. Stat. § 36-337(A)(3) Does Not Violate the Equal Protection
       Clause.....................................................................................10

       A.    Section 36-337(A)(3) is subject to rational basis review because it
             does not classify based on transgender status. ...................12

       B.    Section 36-337(A)(3) easily satisfies rational basis review. ...............16

       C.    Section 36-337(A)(3) would also satisfy heightened scrutiny if that
             standard were to apply.........................................................24

II.    The District Court Erred Because Ariz. Rev. Stat. § 36-337(A)(3) Does Not
       Violate Substantive Due Process. ...............................................28

       A.    Section 36-337(A)(3) does not violate the right to informational
             privacy. ..............................................................................29

i

1.    Section 36-337(A)(3) does not implicate the right of informational privacy at all. ........................................................29

2.    Even if § 36-337(A)(3) were to implicate informational privacy in some applications, Plaintiffs have fallen far short of the showing necessary to prevail on their facial challenge. ...........33

B.    Section 36-337(A)(3) does not violate the right to refuse unwanted medical procedures. .............................................................35

III.    The District Court's Injunction Rests on an Erroneous Legal Conclusion Regarding Severability. ...................................................................38

A.    The district court's injunction conflicts with the legislative intent underlying § 36-337(A)(3). ................................................39

B.    The district court's injunction impermissibly rewrites § 36-337(A)(3) by purporting to "strik[e]" the term "operation," which is inseparable from the modifier "sex change." .........................................612

C.    The district court's injunction would violate Arizona's unintelligibility doctrine. ..............................................................47

CONCLUSION ....................................................................................49

CERTIFICATE OF RELATED CASES ...............................................50

CERTIFICATE OF COMPLIANCE ...................................................51

ADDENDUM

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Arizona Libertarian Party v. Reagan*,
    798 F.3d 723 (9th Cir. 2015)......................................................22

*Arizona Libertarian Party, Inc. v. Bayless*,
    351 F.3d 1277 (9th Cir. 2003)......................................................9

*Armour v. City of Indianapolis*,
    566 U.S. 673 (2012)......................................................24

*Astrue v. Capato ex rel. B.N.C.*,
    566 U.S. 541 (2012)......................................................24

*Ayotte v. Planned Parenthood of N. New England*,
    546 U.S. 320 (2006)........................................ 38-39, 44, 46

*Borja v. Nago*,
    115 F.4th 971 (9th Cir. 2024)......................................................21

*Bowen v. Roy*,
    476 U.S. 693 (1986)......................................................25

*Boyd v. State*,
    256 Ariz. 468 (Ariz. App. 2023)......................................................45

*Burson v. Freeman*,
    504 U.S. 191 (1992)......................................................26

*Capen v. Saginaw Cnty.*,
    103 F.4th 457 (6th Cir. 2024)......................................................37

*CAVCO Indus. v. Indus. Comm'n of Ariz.*,
    129 Ariz. 429 (1981)......................................................47

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985)......................................................10

*Clark by and through Clark v. Arizona Interscholastic Ass'n*,
695 F.2d 1126 (9th Cir. 1982)....................................................................27

*Cnty. of Santa Cruz v. Burwell*,
584 F. App'x 425 (9th Cir. 2014)..............................................................24

*Collins v. City of Harker Heights*,
503 U.S. 115 (1992)...................................................................................36

*Corbitt v. Sec'y of Alabama Law Enforcement Agency*,
115 F.4th 1335 (11th Cir. 2024)................................................ 19-20, 22, 27

*Country Classic Dairies, Inc. v. Montana Dep't of Com. Milk Control Bureau*,
847 F.2d 593 (9th Cir. 1988).....................................................................12

*Crawford v. Antonio B. Won Pat Int'l Airport Auth.*,
917 F.3d 1081 (9th Cir. 2019)...................................................................16

*Cruzan by Cruzan v. Director, Mo. Dep't of Health*,
497 U.S. 261 (1990)...................................................................................37

*Curtis v. Inslee*,
154 F.4th 678 (9th Cir. 2025)....................................................................16

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022)............................................................................ 32-33

*Doe v. City of New York*,
15 F.3d 264 (2d Cir. 1994).........................................................................34

*Doe v. Garland*,
17 F.4th 941 (9th Cir. 2021)......................................................................29

*Doe v. Horne*,
115 F.4th 1083 (9th Cir. 2024)............................................................ 24-25, 27

*Doe v. Lockwood*,
No. 95-3499, 1996 WL 367046 (6th Cir. June 27, 1996)..............................34

*Farris v. Advantage Capital Corp.*,
　　217 Ariz. 1 (2007) ........................................................................... 40

*F.C.C. v. Beach Commc'ns, Inc.*,
　　508 U.S. 307 (1993) ........................................................................ 11

*Florida Bar v. Went for It, Inc.*,
　　515 U.S. 618 (1995) ........................................................................ 26

*Gamble v. City of Escondido*,
　　104 F.3d 300 (9th Cir. 1997) .......................................................... 24

*Geduldig v. Aiello*,
　　417 U.S. 484 (1974) ........................................................................ 15

*Gore v. Lee*,
　　107 F.4th 548 (6th Cir. 2024) ............................. 1, 21-22, 26, 31-33

*Heckler v. Mathews*,
　　465 U.S. 728 (1984) ........................................................................ 39

*Hill v. Wallace*,
　　259 U.S. 44 (1922) .......................................................................... 48

*In re Michaela Lee R.*,
　　756 A.2d 214 (Conn. 2000) ............................................................ 31

*In re U.S. OPM Data Sec. Breach Litig.*,
　　928 F.3d 42 (D.C. Cir. 2019) .......................................................... 29

*Indiana Bureau of Motor Vehicles v. Simmons*,
　　233 N.E.3d 1016 (Ind. App. 2024) ............................................ 20, 27

*Karnoski v. Trump*,
　　926 F.3d 1180 (9th Cir. 2019) ........................................................ 13

*Lehnhausen v. Lake Shore Auto Parts Co.*,
　　410 U.S. 356 (1973) ........................................................................ 11

*Lipscomb by and through DeFehr v. Simmons*,
    962 F.2d 1374 (9th Cir. 1992) ................................................................. 16-17

*Little v. Hecox*,
    No. 24-38 (U.S.) ......................................................................................... 13

*Lyng v. Castillo*,
    477 U.S. 635 (1986) .............................................................................. 18, 20

*Montana Med. Ass'n v. Knudsen*,
    119 F.4th 618 (9th Cir. 2024) ...................................................................... 20

*NASA v. Nelson*,
    562 U.S. 134 (2011) .................................................................................... 29

*NetChoice, LLC v. Bonta*,
    113 F.4th 1101 (9th Cir. 2024) .................................................................... 46

*Nielsen v. Preap*,
    586 U.S. 392 (2019) .................................................................................... 45

*Olson v. California*,
    104 F.4th 66 (9th Cir. 2024) ................................................................. 16, 20

*Planned Parenthood of S. Ariz. v. Lawall*,
    307 F.3d 783 (9th Cir. 2002) ...................................................................... 30

*Poe by Poe v. Drummond*,
    149 F.4th 1107 (10th Cir. 2025) .................................................................. 36

*Porter v. Martinez*,
    68 F.4th 429 (9th Cir. 2023) ................................................................. 26-27

*Project Veritas v. Schmidt*,
    125 F.4th 929 (9th Cir. 2025) ..................................................................... 38

*Raidoo v. Moylan*,
    75 F.4th 1115 (9th Cir. 2023) ..................................................................... 21

*Regino v. Staley,*
    133 F.4th 951 (9th Cir. 2025) ........................................................ 36

*Reiter v. Sonotone Corp.,*
    442 U.S. 330 (1979) .................................................................... 46

*Riley v. St. Louis Cnty.,*
    153 F.3d 627 (8th Cir. 1998) ........................................................ 34

*Russell v. Gregoire,*
    124 F.3d 1079 (9th Cir. 1997) ...................................................... 34

*Seattle Pac. Univ. v. Ferguson,*
    104 F.4th 50 (9th Cir. 2024) ......................................................... 46

*Sessions v. Morales-Santana,*
    582 U.S. 47 (2017) ...................................................................... 39

*Shurtleff v. City of Boston,*
    596 U.S. 243 (2022) .................................................................... 22

*Simon v. City & Cnty. of San Francisco,*
    135 F.4th 784 (9th Cir. 2025) ........................................... 17, 33, 35

*Stanton v. Stanton,*
    421 U.S. 7 (1975) ........................................................................ 39

*State v. Patel,*
    251 Ariz. 131 (2021) ............................................ 38, 44, 46-47, 49

*State v. Prentiss,*
    163 Ariz. 81 (1989) ..................................................................... 40

*State v. Watson,*
    120 Ariz. 441 (1978) ........................................................ 38-39, 44

*State Compensation Fund v. Symington,*
    174 Ariz. 188 (1993) ................................................................... 39

*State ex rel. Brnovich v. City of Phoenix*,
  249 Ariz. 239 (2020)................................................................... 47-48

*State ex rel. Ross v. Nance*,
  165 Ariz. 286 (1990)........................................................................41

*Stormans, Inc. v. Wiesman*,
  794 F.3d 1064 (9th Cir. 2015)........................................................36

*Sw. Engineering Co. v. Ernst*,
  79 Ariz. 403 (1955)..........................................................................47

*Terry v. United States*,
  593 U.S. 486 (2021)..........................................................................46

*Trump v. Orr*,
  146 S. Ct. 44 (2025).........................................................................32

*United States v. Plascencia-Orozco*,
  852 F.3d 910 (9th Cir. 2017)..........................................................18

*United States v. Skrmetti*,
  605 U.S. 495 (2025)............................................... 2, 8, 12-15, 23

*Walker v. Texas Division, Sons of Confederate Veterans, Inc.*,
  576 U.S. 200 (2015)..........................................................................22

*Washington v. Glucksberg*,
  521 U.S. 702 (1997)..........................................................................37

*West Virginia v. B.P.J.*,
  No. 24-43 (U.S.) ...............................................................................13

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
  586 U.S. 9 (2018)........................................................................ 45-46

*Whalen v. Roe*,
  429 U.S. 589 (1977)..........................................................................29

*Wilkins v. United States*,
  163 F.4th 636 (9th Cir. 2025)............................................................9

**Statutory and Regulatory Authorities**

18 U.S.C. § 1028A(a)(1)..................................................................18

20 C.F.R. § 422.103(c)(2) ..............................................................17

22 C.F.R. § 51.42(a) .......................................................................17

1967 Ariz. Legis. Serv. Ch. 77, § 2 ...........................................26, 42

2004 Ariz. Legis. Serv. Ch. 117, § 8 ..........................................41, 43

ARIZ. ADMIN. CODE R4-16-201(C)(1) .............................................18

ARIZ. ADMIN. CODE R6-13-112(B)(1)(b).........................................18

ARIZ. ADMIN. CODE R9-19-201(A)(3)(a)........................................4, 19

ARIZ. ADMIN. CODE R9-19-204(F)(2)(c)(iii) .....................................4

ARIZ. ADMIN. CODE R9-19-205(A)(1)(b)(iii) .....................................4

ARIZ. ADMIN. CODE R9-19-206(B)(1)(d)...........................................4

ARIZ. ADMIN. CODE R9-19-208 .......................................................23

ARIZ. ADMIN. CODE R9-19-208(O)....................................................5

ARIZ. ADMIN. CODE R9-19-210(A)....................................................4

ARIZ. ADMIN. CODE R9-19-212(A)....................................................4

ARIZ. REV. STAT. § 12-1841 .............................................................7

ARIZ. REV. STAT. § 16-166(F)(2).................................................18, 25

ARIZ. REV. STAT. § 36-323 ...........................................................4, 23

ARIZ. REV. STAT. § 36-326(A)(4) ....................................................................42

ARIZ. REV. STAT. § 36-333(A) .........................................................................4

ARIZ. REV. STAT. § 36-333(B) ....................................................................4, 19

ARIZ. REV. STAT. § 36-333(C) ........................................................................19

ARIZ. REV. STAT. § 36-333(C)(1) .....................................................................4

ARIZ. REV. STAT. § 36-336(C) ..........................................................................4

ARIZ. REV. STAT. § 36-337 ...........................................................4, 11, 23, 40

ARIZ. REV. STAT. § 36-337(A) ................................................................. 30-31

ARIZ. REV. STAT. § 36-337(A)(3) ..................................... 1, 5, 11-12, 19, 37, 40, 45

ARIZ. REV. STAT. § 36-337(A)(3)(b) ..............................................................11

ARIZ. REV. STAT. Title 36, Chapter 3 ..............................................................4

## Other Authorities

Am. Bar Ass'n Div. for Public Education, *Birth Certificates* (Nov. 20, 2018), *at* https://tinyurl.com/yzsy2xy6 ....................................................................17

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS (2012) ....................................................................................45

Aven Kelley, *I've been fighting for trans rights since high school. It's only getting harder*, ARIZONA MIRROR (Mar. 11, 2025) ....................................................34

BRYAN A. GARNER, THE CHICAGO GUIDE TO GRAMMAR, USAGE, AND PUNCTUATION (2016) ..............................................................................................................45

Cary Franklin, *Living Textualism*, 2020 SUP. CT. REV. 119 (2020) ........................42

Human Rights Watch & InterACT, *"I Want to Be Like Nature Made Me"*:
    *Medically Unnecessary Surgeries on Intersex Children in the US* (July 25,
    2017), *at* https://tinyurl.com/ymemv4x7.......................................................15

Kris Franklin & Sarah E. Chinn, *Transsexual, Transgender, Trans: Reading
    Judicial Nomenclature in Title VII Cases*, 32 BERKELEY J. GENDER, L. & J. 1
    (2017)...................................................................................................... 42-43

Malinda L. Seymore, *Obituary for the Birth Certificate*, 78 SMU L. REV. 639
    (2025).........................................................................................................32

*Sex Change*, CAMBRIDGE DICTIONARY,
    https://dictionary.cambridge.org/dictionary/english/sex change (last visited
    February 6, 2026)........................................................................................48

## **INTRODUCTION**

Every State creates birth certificates that record information, including biological sex, about babies born in that jurisdiction. *See Gore v. Lee*, 107 F.4th 548, 552 (6th Cir. 2024). Some, but not all, States allow changes to an individual's birth-certificate sex. *See id.* at 553. Since 1967, Arizona has allowed the State Registrar to amend a birth certificate "[f]or a person who has undergone a sex change operation or has a chromosomal count that establishes the sex of the person as different than in the registered birth certificate." ARIZ. REV. STAT. § 36-337(A)(3). Eleven other States maintain similar provisions. *See Gore*, 107 F.4th at 553.

The district court erred by ruling that the Constitution mandates birth certificate amendments for transgender individuals. Arizona's law does not violate the Equal Protection Clause because it classifies on the basis of a medical procedure, not transgender status. As the district court acknowledged, "The statute and supporting regulations do not explicitly single out transgender individuals." ER-20. Arizona's law satisfies rational basis review or, if it applied, heightened scrutiny, by advancing important State interests in reliably verifying identity, preventing fraud, and preserving the stability of the vital-records system.

Arizona's law also does not violate the Due Process Clause because it does not implicate a right to informational privacy or a right to refuse unwanted medical treatment. Nor is the right to a birth certificate conforming to one's gender identity

1

deeply rooted in our history and tradition or essential to our Nation's scheme of ordered liberty.

The district court combined its erroneous legal analysis with an erroneous remedy. The permanent injunction entered below conflicts with legislative intent, improperly rewrites Arizona law, and violates Arizona's unintelligibility doctrine.

Because Arizona's law does not violate the Constitution, the courts should "leave questions regarding its policy to the people, their elected representatives, and the democratic process." *United States v. Skrmetti*, 605 U.S. 495, 525 (2025). This Court thus should reverse the district court's judgment and remand with directions for the district court to grant summary judgment in favor of the Defendant.

## <u>JURISDICTIONAL STATEMENT</u>

The district court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because all of Plaintiffs' claims arise under the Constitution of the United States and 42 U.S.C. § 1983.

The district court entered its final judgment in this matter, disposing of all parties' claims, on September 30, 2025. *See* ER-3. Thus, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Appellants Warren Petersen and Steve Montenegro timely filed their notice of appeal on October 30, 2025. ER-152-58; Fed. R. App. P. 4(a).

2

## **ISSUES FOR REVIEW**

I.    Whether Ariz. Rev. Stat. § 36-337(A)(3) violates the Equal Protection Clause. This involves two sub-issues:

1)    Whether § 36-337(A)(3)'s limitation of birth certificate amendments to a "sex change operation" or a certain chromosome count is subject to, and passes, rational basis review.

2)    Alternatively, whether § 36-337(A)(3) satisfies heightened scrutiny because it is substantially related to advancing the important governmental interests of verifying identities and preventing fraud.

II.   Whether Ariz. Rev. Stat. § 36-337(A)(3) violates the Due Process Clause. This involves two sub-issues:

1)    Whether § 36-337(A)(3) violates a substantive due process right to informational privacy.

2)    Whether § 36-337(A)(3) violates a substantive due process right to refuse unwanted medical treatment.

III.  Whether the district court erred by issuing an injunction purporting to "strik[e]" the term "operation" from Ariz. Rev. Stat. § 36-337(A)(3).

## **CONSTITUTIONAL AND STATUTORY AUTHORITY**

All pertinent constitutional provisions and statutes are contained in the Addendum filed with this brief.  *See* Cir. R. 28-2.7.

## STATEMENT OF THE CASE

### I.    Statutory and Regulatory Background

Like every State, Arizona collects information about all births within the State, which is reflected in birth certificates.  *See generally* ARIZ. REV. STAT. Title 36, Chapter 3.  Arizona regulations dictate the information contained in birth certificates.  *See* ARIZ. ADMIN. CODE R9-19-210(A) & R9-19-212(A).  That information includes an individual's "sex" as reported at the time of the registration of the individual's birth.  *See* ARIZ. ADMIN. CODE R9-19-201(A)(3)(a); R9-19-204(F)(2)(c)(iii); R9-19-205(A)(1)(b)(iii); R9-19-206(B)(1)(d).  Medical professionals typically submit the required information, ARIZ. REV. STAT. § 36-333(B), (C)(1), and they must do so within seven days after birth, *id.* at § 36-333(A).

Arizona law authorizes the State Registrar to amend birth certificates only under certain specifically enumerated circumstances.  *See* ARIZ. REV. STAT. §§ 36-323, 36-336(C), 36-337.  As relevant to this case, § 36-337(A)(3) requires the Registrar to amend a birth certificate:

> For a person who has undergone a sex change operation or has a chromosomal count that establishes the sex of the person as different than in the registered birth certificate, [if the Registrar receives] both of the following:
>
> > (a) A written request for an amended birth certificate from the person or, if the person is a child, from the child's parent or legal guardian.

> (b) A written statement by a physician that verifies the sex
> change operation or chromosomal count.

ARIZ. REV. STAT. § 36-337(A)(3). The Registrar has established a specific process to request a birth-certificate amendment under § 36-337(A)(3). *See* ARIZ. ADMIN. CODE R9-19-208(O).

## II.    Factual and Procedural Background

Plaintiffs in this case are five minors who were born in Arizona and who identify as transgender. ER-64, ER-67. Each Plaintiff alleged that the sex reflected on that individual's original birth certificate differs from that individual's gender identity. *See id.* None of the Plaintiffs has undergone a sex change operation. *See* ER-88.

Plaintiffs filed this action in November 2020. *See* D.Ct. Doc. 1.[1] Plaintiffs contend that § 36-337(A)(3) violates the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment because it does not permit transgender individuals to amend the "sex" field on their birth certificates unless those individuals have undergone a sex change operation. *See generally* ER-90-93. Plaintiffs sought injunctive and declaratory relief against the State Registrar and two other officials within the Arizona Department of Health Services. ER-67-68, ER-

---

[1] Unless otherwise noted, all citations to the district court docket refer to the page numbering inserted by the court's electronic filing system at the top of the page, not to internal pagination at the bottom of the page.

94-95.  Plaintiffs later voluntarily dismissed the two other officials.  D.Ct. Docs. 66, 98.  On August 10, 2023, the district court certified a class of "[a]ll transgender individuals born in Arizona, now and in the future, who seek to change the sex listed on their birth certificate, but have not undergone a 'sex change operation' as treatment for their gender dysphoria."  ER-26.  In November 2023, Plaintiffs and Defendant filed cross-motions for summary judgment on all claims.  *See* D.Ct. Docs. 230, 232.

On August 20, 2024, the district court granted Plaintiffs' motion for summary judgment in its entirety and denied Defendant's motion for summary judgment in its entirety.  *See* ER-12.  With respect to equal protection, the district court found that § 36-337(A)(3) classifies on the basis of transgender status and thus must satisfy heightened scrutiny.  ER-18-21.  The district court further concluded that the statute could not satisfy heightened scrutiny.  ER-23-24.  In a single-sentence footnote, the district court also stated that the statute could not even satisfy rational basis review.  ER-24.  With respect to substantive due process, the district court held that § 36-337(A)(3) violates Plaintiffs' rights to informational privacy and to refuse unwanted medical treatment.  ER-21-23.

After granting summary judgment in favor of Plaintiffs, the district court ordered briefing on the proper remedy.  D.Ct. Doc. 281.  During the course of the briefing schedule set by the district court, the private counsel who had represented

6

Defendant to that point withdrew and were replaced by counsel from the Office of the Arizona Attorney General. *See* D.Ct. Docs. 284, 286.

Exercising their statutory right to defend the constitutionality of state laws, *see* ARIZ. REV. STAT. § 12-1841, Warren Petersen—in his capacity as President of the Arizona Senate—and Steve Montenegro—in his capacity as Speaker of the Arizona House of Representatives (together, the "Legislative Leaders")—submitted an *amici curiae* brief regarding Plaintiffs' requested remedy. ER-54. The district court directed Plaintiffs to respond to the arguments raised by the Legislative Leaders and directed the Legislative Leaders to participate in the oral argument relating to the permanent injunction. D.Ct. Doc. 292.

On September 30, 2025, the district court entered a permanent injunction purporting to "strik[e] the singular word 'operation' from both Arizona Revised Statutes § 36-337(A)(3) and its implementing regulation Arizona Administrative Code R9-19-208(O)." ER-10. The injunction prohibited Defendant "from requiring that a transgender individual first undergo a sex change operation as a prerequisite to changing the sex on their birth certificate through the private administrative process under Arizona Revised Statutes § 36-337(A)(3) and its implementing regulation Arizona Administrative Code R9-19-208(O)." ER-11. The district court entered judgment on the same day. ER-3.

Because the Arizona Attorney General would not commit to appealing the judgment, and because she was unwilling to make key arguments to defend the validity of § 36-337(A)(3), the Legislative Leaders intervened in this litigation. *See* D.Ct. Doc. 314 (motion to intervene) & ER-33 (order granting motion to intervene). The Legislative Leaders timely appealed. ER-152.

## SUMMARY OF ARGUMENT

Section 36-337(A)(3) does not violate the Equal Protection Clause. Under the Supreme Court's decision in *United States v. Skrmetti*, 605 U.S. 495 (2025), § 36-337(A)(3) does not classify on the basis of transgender status. Thus, the statute need only satisfy rational basis review.

Section 36-337(A)(3) easily satisfies that standard. The law rationally advances the State's legitimate interest in ensuring that birth certificates can be used to reliably verify individuals' identities, which in turn prevents fraud in government programs. The statute also rationally advances the State's legitimate interest in the stability of its vital-records system. Moreover, even if heightened scrutiny were to apply, § 36-337(A)(3) would satisfy that standard, because it substantially furthers the State's important interests in reliable identification and fraud prevention.

Section 36-337(A)(3) also does not violate substantive due process. With respect to the substantive due process right to informational privacy, the statute does not even implicate this right, because the statute does not require the disclosure of

8

any information at all to third parties. Even if the statute did require the disclosure of sensitive information in some applications, numerous applications of the statute would not violate informational privacy. Because Plaintiffs are maintaining only a facial challenge, the existence of these indisputably valid applications of § 36-337(A)(3) defeats their claim.

Section 36-337(A)(3) also does not violate the substantive due process right to refuse unwanted medical treatment. Transgender individuals in Arizona remain free to decide whether to undergo a sex change operation. Thus, the statute does not violate due process.

Even if § 36-337(A)(3) were unconstitutional, the Court should vacate and modify the permanent injunction entered by the district court, which purported to sever the phrase "sex change" from the term "operation." Arizona law—which the district court did not even consider when crafting its injunction—governs the severability of Arizona statutes and precludes the district court's severability determination.

## STANDARD OF REVIEW

The Court reviews *de novo* all issues raised by this appeal. *Wilkins v. United States*, 163 F.4th 636, 643 (9th Cir. 2025) (grant or denial of summary judgment); *Arizona Libertarian Party, Inc. v. Bayless*, 351 F.3d 1277, 1283 (9th Cir. 2003) (severability).

**ARGUMENT**

The district court found that Ariz. Rev. Stat. § 36-337(A)(3) violates the Equal Protection Clause and the Due Process Clause.[2]  The district court erred on both fronts.  Thus, the Court should reverse and remand with instructions to enter judgment in favor of the Defendant.

If the Court were to affirm the judgment on the merits, then in the alternative, the Court should vacate and modify the permanent injunction.  In its order, the district court erred by purporting to sever the statutory term "operation" from the phrase "sex change."  Those provisions are not severable, and thus the district court should have enjoined Defendant from amending any birth certificates under the challenged provisions.

## I.  Ariz. Rev. Stat. § 36-337(A)(3) Does Not Violate the Equal Protection Clause.

"The Equal Protection Clause of the Fourteenth Amendment … is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted).  However, "equal protection is not a license for courts to judge the wisdom, fairness,

---

[2] The district court's summary judgment order only addressed Ariz. Rev. Stat. § 36-337(A)(3), while the permanent injunction addressed both § 36-337(A)(3) and its implementing regulation, Arizona Administrative Code R9-19-208(O).  Because the language at issue is the same in both provisions, this brief will refer to both the statute and the regulation as § 36-337(A)(3).

or logic of legislative choices." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). "A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution." *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973) (citation omitted).

Arizona has chosen to permit amendment of a birth certificate only under certain statutorily enumerated circumstances. *See* ARIZ. REV. STAT. § 36-337. As relevant here, the challenged statute permits an amendment of the "sex" identifier on an individual's birth certificate "[f]or a person who has undergone a sex change operation or has a chromosomal count that establishes the sex of the person as different than in the registered birth certificate." *Id.* § 36-337(A)(3). The person seeking an amendment must provide "[a] written statement by a physician that verifies the sex change operation or chromosomal count." *Id.* § 36-337(A)(3)(b). If an individual has not undergone a sex change operation and does not have a chromosomal count inconsistent with the sex listed on the individual's birth certificate, § 36-337(A)(3) does not permit amendment of the "sex" identifier, nor does any other statute. *See id.*

The district court erred because § 36-337(A)(3) is subject to rational basis review, which it easily satisfies. Even if heightened scrutiny applied, § 36-337(A)(3) would satisfy it. Thus, the challenged provisions do not violate the Equal Protection Clause.

11

### A. Section 36-337(A)(3) is subject to rational basis review because it does not classify based on transgender status.

"The first step in equal protection analysis is to identify the state's classification of groups." *Country Classic Dairies, Inc. v. Montana Dep't of Com. Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988). "Where a state law neither 'proceeds along suspect lines nor infringes fundamental constitutional rights,' reviewing courts generally uphold a challenged law under the Equal Protection Clause so long as 'any reasonably conceivable state of facts ... could provide a rational basis for the classification.'" *Skrmetti*, 605 U.S. at 585-86 (Sotomayor, J., dissenting) (citation omitted).

On its face, § 36-337(A)(3) does not classify based on transgender status. To the extent that it draws any distinctions at all, the statutory text distinguishes between individuals who have undergone a sex change operation and those who have not. *See* ARIZ. REV. STAT. § 36-337(A)(3). The law thus "does not classify on the basis of transgender status," but instead on the basis of "a medical procedure." *Skrmetti*, 605 U.S. at 517-18.

The district court begrudgingly acknowledged that the statutory text does not classify based on transgender status: "The statute and supporting regulations do not explicitly single out transgender individuals." ER-20. Nevertheless, the district court insisted that "any logical reading of the statute and regulation reflects that it applies nearly exclusively to transgender people; who else is going to voluntarily

12

seek out a 'sex change operation?'" ER-20. For that reason, the district court erroneously concluded that § 36-337(A)(3) classifies based on an individual's transgender status, *see* ER-18-21, and that this triggers heightened scrutiny, *see Karnoski v. Trump*, 926 F.3d 1180, 1200-01 (9th Cir. 2019).[3]

The Supreme Court's holding in *United States v. Skrmetti*, 605 U.S. 495 (2025), directly forecloses the district court's reasoning.[4] In *Skrmetti*, the challenged law prohibited certain treatments for gender dysphoria, gender identity disorder, and gender incongruence, but it permitted the same treatments for many other diagnoses. 605 U.S. at 518-19. The challengers contended that this regime classified based on transgender status, because it prohibited treatments only under circumstances that

---

[3] The Legislative Leaders preserve for appeal the argument that classification by transgender status is not subject to heightened scrutiny. The Supreme Court "has not previously held that transgender individuals are a suspect or quasi-suspect class." *Skrmetti*, 605 U.S. at 517; *see also id.* at 557 (Barrett, J., concurring) ("The Equal Protection Clause does not demand heightened judicial scrutiny of laws that classify based on transgender status."); *id.* at 558 (Alito, J., concurring in part and in the judgment) (concluding that classification based on transgender status "does not warrant heightened scrutiny"). The Legislative Leaders also reserve their right to seek additional briefing or reconsideration if the Supreme Court addresses this issue in cases that have been submitted for decision. *See West Virginia v. B.P.J.*, No. 24-43 (U.S.); *Little v. Hecox*, No. 24-38 (U.S.).

[4] In fairness to the district court, the Supreme Court decided *Skrmetti* in June 2025, more than ten months after the district court issued its summary judgment order. However, the Legislative Leaders raised *Skrmetti* to the district court soon after the Supreme Court's decision and asked the district court to reconsider its summary judgment order in light of that new, binding authority. ER-49-52. The district court refused to do so. ER-6-7.

would apply exclusively to transgender individuals. *See id.* at 517-19; *see also id.* at 598-99 (Sotomayor, J., dissenting).

*Skrmetti* rejected that contention. The Supreme Court explained that the challenged statute divided patients "into two groups: those who might seek puberty blockers or hormones to treat the excluded diagnoses, and those who might seek puberty blockers or hormones to treat other conditions." *Id.* at 519. The Supreme Court acknowledged that "only transgender individuals seek puberty blockers and hormones for the excluded diagnoses," and thus "the first group includes only transgender individuals." *Id.* However, "the second group, in contrast, encompasses both transgender and nontransgender individuals." *Id.* Thus, "there is a 'lack of identity' between transgender status and the excluded medical diagnoses." *Id.* For this reason, the Supreme Court held that the statute at issue did not classify based on transgender status. *Id.*

*Skrmetti*'s analysis is dispositive here. Just as in *Skrmetti*, § 36-337(A)(3) divides individuals into two groups: those who have undergone a sex change operation and those who have not. Neither group includes only transgender individuals. The former group, those who have undergone a sex change operation, consists of both transgender individuals and non-transgender individuals. *See* ER-73 ("A.R.S. § 36-337 provides for the issuance of an updated birth certificate … to

14

correct the sex of a transgender or intersex person.").[5]  The latter group, those who have not undergone a sex change operation, includes both transgender individuals (*e.g.*, Plaintiffs) and non-transgender individuals.  Indeed, the overwhelming majority of individuals in the latter group—*i.e.*, the group of persons who *cannot* obtain an amendment under the statute—are not transgender.

Thus, as in *Skrmetti*, "there is a 'lack of identity' between transgender status" and whether an individual has undergone a sex change operation.  *Skrmetti*, 605 U.S. at 519.  As a result, *Skrmetti* dictates that § 36-337(A)(3) does not classify based on transgender status.  *See id.*; *compare Geduldig v. Aiello*, 417 U.S. 484, 496 n.20 (1974) (rejecting the contention that a state insurance program that excluded coverage for pregnancy involved a sex-based classification, because "[t]he program divides potential recipients into two groups—pregnant women and nonpregnant persons.  While the first group is exclusively female, the second includes members of both sexes").

---

[5] For example, for decades, intersex children were often subjected to sex change operations.  *See generally* Human Rights Watch & InterACT, *"I Want to Be Like Nature Made Me": Medically Unnecessary Surgeries on Intersex Children in the US* (July 25, 2017), *available at* https://tinyurl.com/ymemv4x7.  For many of those children, the decision to conduct a sex change operation was made without them— before they were even old enough to have a say.  *See id.*  Thus, the district court asked the wrong question when it inquired, "who else is going to voluntarily seek out a 'sex change operation'?"  ER-20.

Under *Skrmetti*, § 36-337(A)(3) does not classify based on transgender status. Instead, the statute classifies based on whether an individual has undergone a particular medical procedure. Thus, the Court must review § 36-337(A)(3) under rational basis review. *Crawford v. Antonio B. Won Pat Int'l Airport Auth.*, 917 F.3d 1081, 1095 (9th Cir. 2019).

### B. Section 36-337(A)(3) easily satisfies rational basis review.

"Rational-basis review affords government actions a strong presumption of validity." *Curtis v. Inslee*, 154 F.4th 678, 694 (9th Cir. 2025) (quotation omitted). "It is satisfied where the state decisionmaker could rationally have decided that its action would further a legitimate state interest." *Id.* (quotation omitted). In applying this standard, the Court "ask[s] whether there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Olson v. California*, 104 F.4th 66, 77 (9th Cir. 2024) (en banc) (quotation omitted). "Under rational basis review, the state actor has no obligation to produce evidence to sustain the rationality of a classification; rather, the burden is on the one attacking the arrangement to negative every conceivable basis which might support it." *Curtis*, 154 F.4th at 694 (cleaned up).

When applying rational basis review in the Equal Protection context, courts "inquire[] only whether there is a rational basis for the program viewed as a whole." *Lipscomb by and through DeFehr v. Simmons*, 962 F.2d 1374, 1382 (9th Cir. 1992)

16

(en banc). This Court has recognized that "generalized rules . . . inevitably produce seemingly arbitrary consequences in some individual cases," and thus when applying rational basis review, the Court "ignore[s] individual anomalies." *Id.* (quotation omitted). Moreover, Plaintiffs assert only a facial challenge to § 36-337(A)(3), not an as-applied challenge. *See* ER-18. To succeed on a facial challenge, "Plaintiffs must show that [§ 36-337(A)(3)] is unconstitutional in every conceivable application." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (cleaned up).

Section 36-337(A)(3) easily satisfies rational basis review because the statute rationally serves several legitimate state interests. In short, birth certificates are records created by the government and intended to be used for government purposes. *See, e.g.*, Am. Bar Ass'n Div. for Public Education, *Birth Certificates* (Nov. 20, 2018).[6]

Perhaps most notably, birth certificates play a critical role in identification. *See id.* Birth certificates enable the government to reliably identify an individual and to verify that individual's identity for purposes of other government recordkeeping systems. For example, at the federal level, birth certificates satisfy the identification requirements to obtain a social security number or a passport. *See, e.g.*, 20 C.F.R. § 422.103(c)(2); 22 C.F.R. § 51.42(a). In Arizona, the State uses birth

---

[6] *Available at* https://tinyurl.com/yzsy2xy6.

certificates to verify individuals' identity in contexts ranging from eligibility for government benefits to background checks for regulated professions. *See, e.g.*, ARIZ. ADMIN. CODE R6-13-112(B)(1)(b); R4-16-201(C)(1). Birth certificates are also used for voter registration. ARIZ. REV. STAT. § 16-166(F)(2).

In each of these contexts, the State has a strong interest in reliably verifying an individual's identity and preventing fraud that would occur if someone were using another person's identity. *See, e.g.*, *Lyng v. Castillo*, 477 U.S. 635, 640 (1986) (upholding statute under rational basis review where it was justified by "the potential for mistake and fraud" in government program). The reliability of birth certificates as a means of accurate identification is thus essential to the integrity of these other programs. Consistent with the critical identification role that birth certificates play, federal law makes it a felony to use another person's birth certificate for identification without authorization. 18 U.S.C. § 1028A(a)(1); *United States v. Plascencia-Orozco*, 852 F.3d 910, 914-15 (9th Cir. 2017) (affirming conviction under § 1028A for use of another's birth certificate).

Given the critical importance of birth certificates as a means of reliable identification, Arizona reasonably could have concluded that the "sex" information contained in the birth certificate should reflect information that can be objectively verified. With respect to sex, the State has opted to rely presumptively on a person's biological sex at birth, ordinarily as recorded by an attending healthcare

18

professional.  *See* ARIZ. ADMIN. CODE R9-19-201(A)(3)(a); ARIZ. REV. STAT. § 36-333(B), (C).  Section 36-337(A)(3) permits the amendment of the presumptive sex designation under only two circumstances: where an applicant provides medical documentation that he or she "has undergone a sex change operation," or where the applicant provides medical documentation that he or she "has a chromosomal count that establishes the sex of the person as different than in the registered birth certificate." ARIZ. REV. STAT. § 36-337(A)(3).  In both cases, the new sex listed on the amended birth certificate could be objectively verified, if necessary.  In the case of a sex change operation, the new sex generally could be verified through a physical examination by a medical professional.  With respect to chromosomal counts, the applicant's sex could be objectively verified through genetic testing.  If a dispute about identification were to arise, there would be a method for objectively correlating an individual to the sex listed on the birth certificate, either through physical examination or genetic testing.

By restricting sex information on the birth certificate to information that can be objectively verified, the State reasonably advances its legitimate interests in reliable identification and the prevention of fraud.  In a similar case, the Eleventh Circuit upheld an Alabama requirement that driver's licenses list biological sex at birth, unless an individual has undergone a sex change operation.  *See Corbitt v. Sec'y of Alabama Law Enforcement Agency*, 115 F.4th 1335, 1348-49 (11th Cir.

2024).  This requirement "facilitat[es] the ability to use identity documents to provide physical descriptions of individuals," and "a policy that permits one's sex designation on a driver's license to be changed … because the person has undergone sex-reassignment surgery is a rational line to draw."  *Id.* (cleaned up).  Likewise, the Indiana Court of Appeals rejected an equal protection challenge to an agency refusal to issue a non-binary designation on state driver's licenses and identification cards because "recording an individual's objective characteristic of sex better advances the state interest in accurate identification than would recording a person's subjective non-binary identity."  *Indiana Bureau of Motor Vehicles v. Simmons*, 233 N.E.3d 1016, 1028 (Ind. App. 2024); *see also Lyng*, 477 U.S. at 640.

The district court dismissed the State's identification and fraud-prevention interests, asserting that "[t]here has been no showing of how changing a gender marker without a sex change operation would lead to more fraud and prevent the State from maintaining the accuracy of vital records."  ER-23-24.  But under rational basis review, the State's rationale need not "be supported by evidence or empirical data."  *Olson*, 104 F.4th at 78 (quotation omitted); *see also Montana Med. Ass'n v. Knudsen*, 119 F.4th 618, 631 (9th Cir. 2024) ("Longstanding case law makes clear that Montana did not need to provide evidence or empirical data or like justifications for the precise contours of the classifications it drew." (quotation omitted)).  Indeed, a statute can survive rational basis review even if it is "illogical or unscientific."

*Raidoo v. Moylan*, 75 F.4th 1115, 1121 (9th Cir. 2023). Here, the State had no obligation to proffer evidence proving that § 36-337(A)(3) actually deters fraud. It is enough that the State reasonably could have concluded that reliance on objectively reliable factors enhances the identification role of birth certificates.

The district court also discounted the State's interest on the ground that the State could issue an amended birth certificate listing an individual's preferred gender identity rather than sex, while still using the archived version of the birth certificate (which would correctly reflect the individual's sex) for identification purposes. ER-20. As the Sixth Circuit explained in rejecting a similar argument, "this approach misunderstands rational basis review. That deferential standard does not require States to show that a classification is the only way, the best way, or even the most defensible way to achieve their interests." *Gore*, 107 F.4th at 561. Indeed, "rational basis review does not allow [federal judges] to substitute [their] personal notions of good public policy for those of [the legislature]." *Borja v. Nago*, 115 F.4th 971, 983 (9th Cir. 2024) (quotation omitted).

The State reasonably could conclude that having a single operative birth certificate best served its legitimate interests rather than maintaining two different birth certificates, one to advance the State's interest in identification and the other to satisfy certain individuals' desire for a birth certificate listing gender identity rather than sex. "This cost-benefit analysis is the kind of judgment that the Legislature was

entitled to make." *Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 733 (9th Cir. 2015). The statute thus satisfies rational basis review. *See Gore*, 107 F.4th at 566; *Corbitt*, 115 F.4th at 1349.

Deference to the State's policy judgments is especially appropriate here, because birth certificates constitute government speech. When the government speaks, "it naturally chooses what to say and what not to say. That must be true for government to work." *Shurtleff v. City of Boston*, 596 U.S. 243, 251 (2022) (internal citation omitted). The government-speech doctrine carries particular weight in the context of government-issued identification documents. *See Walker v. Texas Division, Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 212 (2015) (applying government-speech doctrine to license plates, which the Supreme Court characterized as "essentially, government IDs"). The district court's insistence on rewriting the contents of birth certificates—a form of government-issued identification—interferes with the State's "own speech and viewpoint about the best way to keep records of births in the State." *Gore*, 107 F.4th at 561. Particularly under the extremely deferential rational basis standard, the district court's approach lacks merit and exceeds the judicial role. To the extent that Plaintiffs or the district court disagree with the information that the State includes on the birth certificates it issues, "it is the democratic electoral process that first and foremost provides a check on government speech." *Walker*, 576 U.S. at 207.

In addition to its interest in accurate identification, the State also has an interest in the stability of its vital records. Under Arizona law, a birth certificate reflects an individual's sex as observed at birth, with only limited bases for amending that original designation. *See, e.g.*, ARIZ. REV. STAT. §§ 36-323 & 36-337; ARIZ. ADMIN. CODE R9-19-208. Under this regime, it is very unlikely that there will be any need to amend the sex field on a birth certificate at all. And if that field *is* amended—such as when an individual demonstrates that he or she has undergone a sex change operation—it is vanishingly unlikely that a second amendment will be necessary.

The gender identity of at least some transgender individuals, however, can change over time. *See, e.g.*, *Skrmetti*, 605 U.S. at 551 (Barrett, J., concurring) (observing that the *Skrmetti* "plaintiffs acknowledge that some transgender individuals 'detransition' later in life—in other words, they begin to identify again with the gender that corresponds to their biological sex"); *id.* at 576 (Alito, J., concurring in part and concurring in the judgment) ("The parties in this case also admit that transgender status is not an immutable characteristic. Instead, a person's gender identity may shift, and a person who is transgender now may not be transgender later." (cleaned up)). In those cases, the State may need to amend an individual's birth certificate multiple times, creating confusion, cost, and administrative burdens. The State has a legitimate interest in "minimizing

administrative cost and burden." *Cnty. of Santa Cruz v. Burwell*, 584 F. App'x 425, 425 (9th Cir. 2014); *see also, e.g.*, *Armour v. City of Indianapolis*, 566 U.S. 673, 682 (2012) (upholding provision based on "administrative considerations" and "administrative concerns"); *Astrue v. Capato ex rel. B.N.C.*, 566 U.S. 541, 557 (2012) (upholding provision on the basis that it "minimize[s] . . . administrative burden" (quotation omitted)). This legitimate interest provides a further basis to uphold § 36-337(A)(3).

For the reasons stated above, § 36-337(A)(3) satisfies rational basis review.[7] Thus, the district court erred when it granted summary judgment in favor of Plaintiffs and when it denied Defendant's motion for summary judgment. The Court should reverse.

### C. Section 36-337(A)(3) would also satisfy heightened scrutiny if that standard were to apply.

Even if heightened scrutiny were to apply, the statute still would pass constitutional muster. "To withstand heightened scrutiny, a classification must serve important governmental objectives and must be substantially related to achievement of those objectives." *Doe v. Horne*, 115 F.4th 1083, 1106 (9th Cir. 2024) (quotation omitted). Importantly, "[h]eightened scrutiny does not require narrow tailoring." *Id.*

---

[7] This rational basis analysis applies with equal force to Plaintiffs' due process claims. *See Gamble v. City of Escondido*, 104 F.3d 300, 307 (9th Cir. 1997) ("The rational basis test is identical under the two rubrics of equal protection and due process." (cleaned up)).

at 1109.  Instead, the standard "require[s] a substantial relationship between the ends sought and the discriminatory means chosen to achieve them."  *Id.*  In other words, "the means adopted by the State must be in *substantial furtherance* of important government objectives."  *Id.* at 1110 (quotation omitted; emphasis in original).

Section 36-337(A)(3)'s limitations on amending birth certificates satisfy this standard.  At a minimum, the State's interest in reliable identity verification, which in turn prevents fraud in government programs, constitutes an important governmental objective for purposes of heightened scrutiny.  *See, e.g.*, *Bowen v. Roy*, 476 U.S. 693, 709 (1986) (Plurality Op.) ("No one can doubt that preventing fraud in [government] programs is an important goal.").  That is particularly true given that birth certificates can be used for voter registration.  ARIZ. REV. STAT. § 16-166(F)(2).

Section 36-337(A)(3) substantially furthers the State's important governmental objective in reliable identity verification by tying the sex designation to objectively verifiable indicia.  *See* Part I.B, *supra*.  Neither of the district court's two rejoinders has merit.

First, the district court claimed that no evidence supported the contention that tying the sex designation to objectively verifiable facts could improve identity verification and, in turn, fraud prevention.  *See* ER-23-24.  Even under heightened scrutiny, however, the State need not always support its regulations with empirical

25

evidence. "[T]he quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the law's justification." *Porter v. Martinez*, 68 F.4th 429, 445 (9th Cir. 2023) (cleaned up). For example, in *Burson v. Freeman*—"a case applying strict scrutiny"—the Supreme Court found "'a long history, a substantial consensus, and simple common sense' to be sufficient evidence to support the justification of protecting the fundamental right to vote." *Id.* (quoting *Burson v. Freeman*, 504 U.S. 191, 211 (1992)) (brackets omitted); *see also Florida Bar v. Went for It, Inc.*, 515 U.S. 618, 629 (1995) (noting that the Supreme Court had upheld restriction "in a case applying strict scrutiny [*i.e.*, *Burson*] . . . based solely on history, consensus, and simple common sense" (quotation omitted)).

These considerations support the State's justification here even absent empirical data. Arizona's statute is anything but novel. The sex change operation provision was first enacted in 1967. 1967 Ariz. Legis. Serv. Ch. 77, § 2. This remains a leading approach among the States even today, with 11 other States imposing substantially the same requirement. *Gore*, 107 F.4th at 553; *see also id.* (noting that six States do not permit an amendment of sex even in the case of a sex change operation). Plaintiffs' approach, in contrast, is exceptionally novel: no State allowed amendments based solely on declared gender identity until 2017. *Id.* at 552. Given the vintage of the State's approach, coupled with the fact that a sizable

proportion of other States still follow that approach, the State's justification carries substantial weight. *See Porter*, 68 F.4th at 445. Moreover, the State's justification is not merely plausible; it is facially compelling. *Compare Corbitt*, 115 F.4th at 1348; *Indiana Bureau of Motor Vehicles*, 233 N.E.3d at 1028. Thus, the State had no obligation to proffer empirical evidence to justify § 36-337(A)(3), even if heightened scrutiny were to apply.

Second, the district court opined that the State could achieve its stated goal by maintaining two concurrent versions of an individual's birth certificate, one listing the individual's objectively verifiable sex and the other listing the individual's self-declared gender identity. ER-20. On its face, this approach would invite errors, confusion, and administrative burdens. But even assuming that it were administrable, it has little relevance to the heightened-scrutiny inquiry. "Heightened scrutiny does not require narrow tailoring . . . ." *Doe*, 115 F.4th at 1109. Instead, it "require[s] a substantial relationship between the ends sought and the discriminatory means chosen to achieve them." *Id.* "The existence of [potential] alternatives shows only that [a challenged requirement] is not *necessary* to achieve the desired goal. It does not mean that the required substantial relationship does not exist." *Clark by and through Clark v. Arizona Interscholastic Ass'n*, 695 F.2d 1126, 1131 (9th Cir. 1982) (footnote omitted). Thus, the fact that the district court offered a potential alternative approach—a cumbersome, error-prone one at that—does not diminish

the fact that § 36-337(A)(3) directly and substantially advances the State's important objectives.

Section § 36-337(A)(3) would satisfy heightened scrutiny even if it were to apply. Thus, the district court erred by entering summary judgment in favor of Plaintiffs and by denying Defendant's motion for summary judgment. The Court should reverse.

## II. The District Court Erred Because Ariz. Rev. Stat. § 36-337(A)(3) Does Not Violate Substantive Due Process.

The district court held that § 36-337(A)(3) violates substantive due process in two distinct ways. ER-21-23. In the district court's telling, to the extent that transgender individuals cannot obtain a birth certificate that lists their gender identity rather than their biological sex, then the State violates the right to informational privacy because their birth certificates implicitly disclose their transgender status. ER-21-22. On the other hand, the district court reasoned, to the extent that transgender individuals might undergo a sex change operation in order to obtain an amended birth certificate, the statute would violate those individuals' right to refuse unwanted medical treatment. ER-22-23. The district court erred with respect to both conclusions. Section 36-337(A)(3) does not implicate informational privacy at all, nor does the statute compel any person to undergo any medical procedure. The Court should reverse the district court's grant of summary judgment in favor of Plaintiffs and its denial of Defendant's motion for summary judgment.

28

**A.    Section 36-337(A)(3) does not violate the right to informational privacy.**

The district court concluded that § 36-337(A)(3) violates the substantive due process right to informational privacy.  ER-21-22.  In particular, the district court concluded that—for transgender individuals who have not undergone a sex change operation—their birth certificates disclose their transgender status because the listed sex does not match their gender identity.  *Id.*  In the district court's view, this mismatch forces these individuals to disclose their transgender status every time they share their birth certificates with third parties.  *Id.*  This analysis fundamentally misapplies the applicable case law in two distinct ways.

**1.    Section 36-337(A)(3) does not implicate the right of informational privacy at all.**

In *Whalen v. Roe*, the Supreme Court alluded to "the somewhat elusive interest in 'avoiding disclosure of personal matters'" under the rubric of due process.  *Doe v. Garland*, 17 F.4th 941, 946 (9th Cir. 2021) (quoting *Whalen v. Roe*, 429 U.S. 589, 599 (1977)).  Despite *Whalen*'s reference to informational privacy, the Supreme Court has emphasized that it has not actually held that a right to informational privacy exists; instead, the Supreme Court has assumed the existence of the right while rejecting every claim premised on that asserted right.  *NASA v. Nelson*, 562 U.S. 134, 138, 147 & n.10 (2011); *see also In re U.S. OPM Data Sec. Breach Litig.*, 928 F.3d 42, 72 (D.C. Cir. 2019) (noting that the Supreme Court has "steadfastly

29

rejected all informational privacy claims purporting to rest on the Constitution, while simply 'assuming'—but never 'deciding'—that the Constitution protects a right of the sort mentioned in *Whalen*" (cleaned up)).

This Court—relying on *Whalen*—has found that substantive due process does include a right to informational privacy. That "right to 'informational privacy' applies both when an individual chooses not to disclose highly sensitive information to the government and when an individual seeks assurance that such information will not be made public." *Planned Parenthood of S. Ariz. v. Lawall*, 307 F.3d 783, 789-90 (9th Cir. 2002). Plaintiffs do not claim that § 36-337(A)(3) violates informational privacy by requiring them to disclose highly sensitive information to the government. Instead, they claim that birth certificates force them to publicly disclose their transgender status to third parties.

This theory fails, however, because § 36-337(A)(3) does not mandate or permit the disclosure of Plaintiffs' transgender status to any person. The statute does not permit or require the Registrar to disclose such information to any person. *See* ARIZ. REV. STAT. § 36-337(A). Nor does the statute require Plaintiffs to disclose their birth certificates to any person. *See id.* To the extent that Plaintiffs disclose their birth certificates to some third party—and thereby, in their view, indirectly disclose their transgender status to that person—the disclosure occurs because

30

*Plaintiffs* (or their guardians) have decided to share their birth certificates with the third party.

Nothing in § 36-337(A)(3) mandates disclosure by Plaintiffs. *See id.* The Sixth Circuit rejected a comparable informational-privacy challenge to a Tennessee law that does not permit transgender individuals to amend their birth certificates, explaining that "[w]hile Tennessee allows the individuals themselves to disclose the information in birth certificates, that does not show that the State does so." *See Gore*, 107 F.4th at 563. Likewise, the Connecticut Supreme Court rejected an informational-privacy claim regarding information contained in a birth certificate, explaining that "even if [the birth-certificate holder] had a constitutional right to privacy in the parental information contained in her birth certificate, there is no showing here that the state violated that right by impermissibly disclosing that information. The [birth-certificate holder's mother], not the state, provided the birth certificate as part of [the holder's] application to various schools." *In re Michaela Lee R.*, 756 A.2d 214, 232 (Conn. 2000). Because the statute challenged by Plaintiffs does not require disclosure of their transgender status, their informational privacy claim necessarily fails.

The fact that § 36-337(A)(3) does not require Plaintiffs to disclose their birth certificates to anyone demonstrates that their claim does not actually sound in "informational privacy" at all. Instead, they implicitly invoke a purported "right to

31

a birth certificate conforming to one's gender identity." *Gore*, 107 F.4th at 562. Neither Plaintiffs nor the district court have made any effort to show that such an asserted right "is deeply rooted in our history and tradition and . . . essential to our Nation's scheme of ordered liberty"—the standard for the recognition of new fundamental rights under substantive due process. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 237 (2022) (cleaned up).

Nor could they have made such a showing had they tried. *See Gore*, 107 F.4th at 561-65; *see also Trump v. Orr*, 146 S. Ct. 44, 46 (2025) (rejecting equal protection claim challenging policy requiring that passports list the passport holder's biological sex rather than gender identity). "[A] fundamental right must be objectively, deeply rooted in this Nation's history and tradition." *Dobbs*, 597 U.S. at 239 (quotation omitted). But birth certificates of *any* kind "are a relatively recent development; prior to 1900, very few states collected birth information or created a certificate of birth for each child." Malinda L. Seymore, *Obituary for the Birth Certificate*, 78 SMU L. REV. 639, 642 (2025). In the second half of the 20th Century, some (but certainly not all) States created processes for amending birth certificates where an individual had undergone a sex change operation (*i.e.*, what the challenged statutes here provide). *See Gore*, 107 F.4th at 552. In the early 21st Century, "some States began accepting proof of hormone treatment or therapy, as opposed to proof of surgery, to obtain a change to the sex designation on a birth certificate." *Id.* But not

until 2017 did any State "allow changes to an individual's birth-certificate sex based on self-designation alone, without proof of medical treatment or surgery." *Id.*

In light of this history, a purported right to a birth certificate listing gender identity rather than biological sex simply is not "deeply rooted in our history and tradition and . . . essential to our Nation's scheme of ordered liberty." *Dobbs*, 597 U.S. at 237 (cleaned up). As a result, substantive due process does not require the State to provide a birth certificate that reflects an individual's preferred gender identity. *See Gore*, 107 F.4th at 561-65. To the extent that Plaintiffs seek such a right, they must persuade the elected branches of Arizona's Government to establish it by statute.

> ### 2. Even if § 36-337(A)(3) were to implicate informational privacy in some applications, Plaintiffs have fallen far short of the showing necessary to prevail on their facial challenge.

Even if Plaintiffs could show that § 36-337(A)(3) somehow implicated informational privacy, their claim would still fail. As noted above, Plaintiffs assert only a facial challenge to § 36-337(A)(3). *See* ER-18. To prevail, then, "Plaintiffs must show that [§ 36-337(A)(3)] is unconstitutional in every conceivable application." *Simon*, 135 F.4th at 797 (cleaned up). But even accepting Plaintiffs' novel and expansive theory, numerous applications of § 36-337(A)(3) still would not violate substantive due process.

First, at least some transgender individuals who have not undergone a sex change operation have already disclosed their transgender status either publicly or at least to those persons with whom they might be sharing their birth certificate (such as school officials). *See, e.g.*, Aven Kelley, *I've been fighting for trans rights since high school. It's only getting harder*, ARIZONA MIRROR (Mar. 11, 2025). Under those circumstances, the birth certificate would not be disclosing their transgender status; the disclosure would have already happened. Moreover, the individual's transgender status would not constitute private information. The right to informational privacy does not protect non-private information or information that has been voluntarily shared with others. *See, e.g.*, *Russell v. Gregoire*, 124 F.3d 1079, 1094 (9th Cir. 1997) (rejecting informational-privacy claim as to information that was "already fully available to the public"); *Riley v. St. Louis Cnty.*, 153 F.3d 627, 631 (8th Cir. 1998) (rejecting informational-privacy claim based on public disclosure of photographs of corpse, because the plaintiff had "allowed her son's remains to be viewed at the visitation; therefore, [she] had no legitimate expectation that this information would be kept confidential"); *Doe v. Lockwood*, No. 95-3499, 1996 WL 367046, at *4 (6th Cir. June 27, 1996) (per curiam) (unpublished) ("We do not believe that an individual can claim constitutional protection in the privacy of information that he or she has intentionally revealed, without coercion by the state, to the public."); *see also Doe v. City of New York*, 15 F.3d 264, 268 (2d Cir. 1994)

(explaining that "there is no question that an individual cannot expect to have a constitutionally protected privacy interest in matters of public record").

Second, for transgender individuals who *have* undergone a sex change operation, § 36-337(A)(3) would not disclose their transgender identity—under the statute, they could amend the sex listed on their birth certificates to match their gender identity. Thus, the statute would not violate those individuals' right to informational privacy even under Plaintiffs' unprecedented theory. Similarly, for individuals who are not transgender, the statute would not implicate the disclosure of any constitutionally protected information about them. Under these circumstances as well, the statute plainly would not violate the right to informational privacy.

In a substantial number of applications, § 36-337(A)(3) would not violate informational privacy even accepting Plaintiffs' theory. Thus, Plaintiffs cannot prevail on their facial challenge to the statute. *Simon*, 135 F.4th at 797.

## B. Section 36-337(A)(3) does not violate the right to refuse unwanted medical procedures.

The district court also found that § 36-337(A)(3) violates substantive due process by compelling individuals to "undergo surgery" and thereby "give up their bodily autonomy." ER-22. The district court's analysis is erroneous and untethered from the actual terms of the statute.

Substantive due process analysis must always "begin[] by carefully formulating the asserted fundamental right." *Regino v. Staley*, 133 F.4th 951, 964 (9th Cir. 2025) (quotation omitted). "In conducting its analysis, the court must eschew sweeping generalizations, and instead adopt a narrow definition of the interest at stake." *Id.* (quotation omitted). "The Supreme Court has repeatedly rejected broad formulations of asserted fundamental rights, in favor of being more precise." *Id.* (quotation omitted). This careful approach to defining the applicable right derives from the fact that courts have "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

The district court's holding apparently rests on "the right to refuse unwanted medical treatment." ER-21.[8] The Supreme Court has recognized "that a competent

---

[8] At times, the district court also alluded to broader and more nebulous interests, such as "bodily autonomy," "bodily integrity," and the interest in making "choices about medical treatment." *See* ER-21-22. These are precisely the sorts of "broad formulations" that this Court and the Supreme Court have repeatedly rejected in substantive due process cases. *See, e.g.*, *Regino*, 133 F.4th at 964 (collecting cases in which the Supreme Court has rejected similarly generalized formulations, such as the "right to die" or the "freedom from physical restraint"); *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1086 (9th Cir. 2015) (rejecting the purported "right to refrain from taking human life" as "too broad"); *compare Poe by Poe v. Drummond*, 149 F.4th 1107, 1127-28 (10th Cir. 2025) (rejecting parents' purported "right to decide their children's medical care"). In any event, as described in the main text, § 36-337(A)(3) does not dictate any medical decisions or mandate any intrusion into

36

person has a constitutionally protected liberty interest in refusing unwanted medical treatment." *Cruzan by Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 278 (1990); *see also Washington v. Glucksberg*, 521 U.S. 702, 724-26 (1997). But § 36-337(A)(3) does not implicate this right, because the statute does not prevent any person from refusing unwanted medical treatment. *See* ARIZ. REV. STAT. § 36-337(A)(3). Instead, the statute simply requires state officials to amend certain state records when an individual voluntarily opts to undergo a particular medical procedure. *See id.* Transgender individuals in Arizona remain free to decline sex change operations. Indeed, none of the named Plaintiffs in this case have undergone sex change operations, and the class certified in this case is expressly limited to persons who "have not undergone a 'sex change operation.'" ER-26.

Because § 36-337(A)(3) does not prevent transgender individuals from refusing to undergo a sex change operation, the statute does not violate the due process right recognized in *Cruzan*, *Glucksberg*, and related cases. *See Capen v. Saginaw Cnty.*, 103 F.4th 457, 463 (6th Cir. 2024) (rejecting substantive due process claim where the plaintiff "was not forced to accept any treatment, the very core of the right the Supreme Court identified in *Cruzan*"); *Cruzan*, 497 U.S. at 278; *Glucksberg*, 521 U.S. at 724-26. The district court erred by granting summary

---

any person's body. Thus, the statute would not violate even these expansively defined interests.

judgment in favor of Plaintiffs and by denying the Defendant's motion for summary judgment.

## III. The District Court's Injunction Rests on an Erroneous Legal Conclusion Regarding Severability.

Whenever a court finds a statute unconstitutional, it must determine the appropriate remedy. *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329-30 (2006). In particular, "[a]fter finding an application or portion of a statute unconstitutional, [the court] must next ask: Would the legislature have preferred what is left of its statute to no statute at all?" *Id.* at 330. When a federal court considers the severability of a state statute, this severability issue "is a matter of state law." *Project Veritas v. Schmidt*, 125 F.4th 929, 958 (9th Cir. 2025) (en banc).

Under Arizona law, whether a statute is severable is a "question of legislative intent." *State v. Watson*, 120 Ariz. 441, 445 (1978). In evaluating the legislative intent, a court "consider[s] whether the remaining valid provisions are effective and enforceable standing alone and independent of those portions declared unconstitutional." *State v. Patel*, 251 Ariz. 131, 138 (2021) (quotation omitted). A court also "consider[s] whether the valid and invalid portions are so intimately connected as to raise the presumption the legislature would not have enacted one without the other, and whether the invalid portion was the inducement of the act." *Id.* (cleaned up). "Unless [the court] can determine that the valid portion of the

38

statute would have been enacted absent the invalid portion, the provisions are not severable." *State Compensation Fund v. Symington*, 174 Ariz. 188, 195 (1993).

In this case, the severability analysis presented the district court with two remedial options: an injunction extending the amendment rights of § 36-337(A)(3) to transgender individuals who have not undergone a sex change operation; or an injunction prohibiting amendments under the statute for those who have undergone a sex change operation. *See Heckler v. Mathews*, 465 U.S. 728, 738 (1984); *Sessions v. Morales-Santana*, 582 U.S. 47, 74 (2017). Choosing between these remedial options "plainly is an issue of state law." *Stanton v. Stanton*, 421 U.S. 7, 18 (1975).

Without consulting Arizona law at all, the district court opted for the former option, purporting to "strik[e] the singular word 'operation' from" § 36-337(A)(3) and its implementing regulation. ER-10. Because the district court's remedy conflicts with Arizona law, the Court, in the alternative, should vacate and modify the permanent injunction to prohibit Defendant from amending birth certificates of individuals who have undergone sex change operations under § 36-337(A)(3).

## A. The district court's injunction conflicts with the legislative intent underlying § 36-337(A)(3).

Under Arizona law, severability fundamentally turns on legislative intent. *Watson*, 120 Ariz. at 445; *see also Ayotte*, 546 U.S. at 330 ("[T]he touchstone for any decision about remedy is legislative intent, for a court cannot use its remedial powers to circumvent the intent of the legislature." (quotation omitted)). "A statute's plain

language is the best indicator of legislative intent . . . ." *Farris v. Advantage Capital Corp.*, 217 Ariz. 1, 2 (2007). That is especially true when, as here, "there is no clear record of legislative objective and intent." *State v. Prentiss*, 163 Ariz. 81, 86 (1989).

The text of § 36-337 as a whole reflects a clear legislative intent to limit birth certificate amendments to specific, carefully delineated, and expressly enumerated circumstances. *See* ARIZ. REV. STAT. § 36-337. These limitations advance clear governmental interests in administrative efficiency, the stability of vital records, and the reliability of identity verification via those records. In addition, § 36-337(A)(3) in particular reflects a clear legislative intent to limit amendments to a narrow class of cases involving objectively verifiable circumstances that can be corroborated by independent medical documentation. *See id.* § 36-337(A)(3). This legislative intent, as reflected in the statutory text, strongly counsels against expanding the circumstances under which birth certificates can be amended. Moreover, the legislative intent is especially incompatible with permitting amendments based on subjective gender identity rather than any objectively verifiable criteria. Thus, the intent of the Legislature dictates that the district court should have prohibited amendments under § 36-337(A)(3) for individuals who have received a sex change operation rather than expanding the scope of amendments under the statute.

The legislative history of § 36-337(A)(3) confirms this conclusion. In the most recent bill to amend § 36-337(A)(3), the heading for the amendment to § 36-

337 is "Amending birth certificates after adoption, *surgical alteration* and court order." 2004 Ariz. Legis. Serv. Ch. 117, § 8 (emphasis added). Under Arizona law, a court "may properly refer to titles and captions in legislative bills for indications of legislative intent." *State ex rel. Ross v. Nance*, 165 Ariz. 286, 288 (1990). This heading confirms that the Legislature intended for § 36-337(A)(3) to permit birth-certificate amendments only under very specific circumstances: in the case of a *surgical* alteration of sex. *See* 2004 Ariz. Legis. Serv. Ch. 117, § 8. The Legislature plainly did not intend for the statute to permit amendment under a much broader range of circumstances in the absence of a sex change operation. *See id.*

In contrast, the district court's injunction requires the State Registrar to amend the birth certificates of any person whose reported gender identity conflicts with the sex reflected on his or her birth certificate. This approach conflicts with the Legislature's intent, as reflected in the text of § 36-337 as a whole, to limit amendments only to narrow, enumerated circumstances. It also undermines the Legislature's intent, as reflected in the text of § 36-337(A)(3) in particular, to limit amendments to circumstances that lend themselves to objective verification and documentation. And it wholly nullifies the Legislature's intent, as reflected in the heading of the 2004 amendment, to limit amendments under § 36-337(A)(3) to "surgical alteration" of sex.

The district court's justification for its rewrite of the statute cannot withstand scrutiny.  The district court insists that "Section 36-337(A)(3) clearly intends to extend a benefit to transgender individuals. …  However, as time has progressed along with a better understanding of gender dysphoria, the definition of who is classified as a transgender individual has shifted."  ER-9.  This line of reasoning—unmoored from the statutory text and unsupported by citations of any authority whatsoever—fails at every step of the way.

The Arizona Legislature first authorized amendments in the case of sex change operations, the predecessor to § 36-337(A)(3), in 1967.  *See* 1967 Ariz. Legis. Serv. Ch. 77, § 2, effective Jan. 1, 1968 (codifying ARIZ. REV. STAT. § 36-326(A)(4)).  As an initial matter, the district court's suggestion that, in 1967, the Legislature intended "to extend a benefit to transgender individuals" rests on ahistorical, anachronistic assumptions.  "In the 1960s, American were barely cognizant of that category [*i.e.*, transgender individuals] . …"  Cary Franklin, *Living Textualism*, 2020 SUP. CT. REV. 119, 135 (2020).  There is no reason to believe that the Arizona Legislature, in 1967, understood itself to be conferring a benefit on "transgender individuals" as a category.  Moreover, to the extent that the category of transgender was recognized at that time, it was understood "as an umbrella for a variety of gender nonconforming people," including individuals identified with practices such as "cross-dressing."  Kris Franklin & Sarah E. Chinn, *Transsexual,*

*Transgender, Trans: Reading Judicial Nomenclature in Title VII Cases*, 32 BERKELEY J. GENDER, L. & J. 1, 8 & 8 n.39 (2017). Thus, there is no reason to assume—as the district court did—that, in 1967, the Arizona Legislature would have understood the category of "transgender individuals" to include only those who had undergone a sex change operation. The district court's analysis simply projects the district court's own policy preferences onto the Legislature's decisions nearly 60 years ago.

The district court's reasoning is even less tenable given that § 36-337(A)(3) was revised most recently in 2004, and that revision continued to permit amendments only for individuals who had undergone a sex change operation. *See* 2004 Ariz. Legis. Serv. Ch. 117, § 8. There is no plausible argument that, in 2004, the Legislature would have understood the category of "transgender individuals" to include only those who had undergone a sex change operation. *See* Franklin & Chinn, *Transsexual, Transgender, Trans*, 32 BERKELEY J. GENDER, L. & J. at 8 (noting that, by "the 1980s and 1990s, 'transgender' referred to any kind of identification away from one's birth sex").

The district court's reasoning also ignores a much more plausible explanation for the Legislature's decision in 1967 to permit amendments for individuals who had undergone a sex change operation. As described in Parts I.B and I.C above, § 36-337(A)(3) limits amendments to circumstances in which an individual's sex can be

objectively verified and documented. This requirement, in turn, enables birth certificates to provide a reliable means for identifying particular individuals. The Legislature reasonably could have concluded that, for individuals who have undergone a sex change operation, this objective-verification interest is best served by amending the sex field of those individuals' birth certificates. In particular, for those individuals, the sex assigned at birth might not correspond to what would be observed in a physical examination, and thus the Legislature could have reasonably concluded that amending those individuals' birth certificates would better serve the Legislature's objective. The district court's remedy would directly undermine this apparent legislative motivation by mandating amendments in a wide range of circumstances where the sex listed on an amended birth certificate would not be susceptible to objective verification and documentation. Because the district court's severability determination conflicts with the intent of the Legislature, it constitutes an error of law that warrants vacating and modifying the permanent injunction. *See Watson*, 120 Ariz. at 445; *Ayotte*, 546 U.S. at 330.

**B.     The district court's injunction impermissibly rewrites § 36-337(A)(3) by purporting to "strik[e]" the term "operation," which is inseparable from the modifier "sex change."**

Under Arizona law, severability depends on "whether the remaining valid provisions are effective and enforceable standing alone and independent of those portions declared unconstitutional." *Patel*, 251 Ariz. at 138 (quotation omitted). In

its severability determination, the district court purported to "strik[e]" the statutory term "operation" while leaving in place the statutory phrase "sex change." ER-10-11. Arizona law does not permit this approach, because the phrase "sex change" is inseparable from the term "operation" as a matter of grammar and syntax.

As used in § 36-337(A)(3), the phrase "sex change" exclusively functions to modify the noun "operation"—the phrase specifies *which* "operation" warrants amending a birth certificate under the statute. *See* ARIZ. REV. STAT. § 36-337(A)(3). Thus, the phrase "sex change" functions as an adjective in § 36-337(A)(3). *See* BRYAN A. GARNER, THE CHICAGO GUIDE TO GRAMMAR, USAGE, AND PUNCTUATION 33-34 (2016). "Adjectives modify nouns—they pick out a subset of a category that possesses a certain quality." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 19 (2018). If the noun modified by an adjective is removed, the adjective no longer has a grammatical purpose to serve. *See id.* "[W]ords are to be given the meaning that proper grammar and usage would assign them." *Nielsen v. Preap*, 586 U.S. 392, 407-08 (2019) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 140 (2012)); *see also Boyd v. State*, 256 Ariz. 468, 473 (Ariz. App. 2023) (quoting and relying on the same passage from READING LAW). Thus, grammar and syntax preclude excising a noun while retaining the adjectives that modify that noun.

The district court nevertheless purported to excise the noun "operation" while leaving the modifier "sex change" in place. ER-10. As noted above, grammar and syntax do not permit this result: adjectives cannot play their linguistic function if the noun they modify vanishes. *See Weyerhaeuser*, 586 U.S. at 19. An adjective is not "independent of" the noun it modifies, and it is not "effective and enforceable" in the absence of that noun. *Patel*, 251 Ariz. at 138 (quotation omitted). Moreover, the Arizona Legislature plainly "would not have enacted ['sex change'] without ['operation']." *Id.* (quotation omitted). Thus, the modifier "sex change" is not severable from the noun "operation." *See id.*; *cf. NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1125 (9th Cir. 2024) (affirming finding of non-severability where the "remaining provisions no longer make grammatical sense").[9] Because the district court purported to sever "sex change" from "operation," it committed an error of law that mandates vacating and modifying the permanent injunction.

---

[9] The district court also lacked authority to transform adjectives into nouns. *See, e.g.*, *Terry v. United States*, 593 U.S. 486, 494 (2021) (emphasizing that courts cannot "convert nouns to adjectives and vice versa"); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (rejecting interpretation that "would convert the noun 'business' into an adjective"). Doing so would plainly amount to "rewriting state law to conform it to constitutional requirements," which the Supreme Court has expressly prohibited. *Ayotte*, 546 U.S. at 329. "[F]ederal courts do not have the power to rewrite or change state statutes with a red pen." *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 62 (9th Cir. 2024).

### C. The district court's injunction would violate Arizona's unintelligibility doctrine.

Under Arizona law, the valid portion of a statute is severable only if it is "effective and enforceable standing alone and independent of those portions declared unconstitutional." *Patel*, 251 Ariz. at 138 (quotation omitted). Under Arizona's unintelligibility doctrine, the statutory phrase "sex change" would not be effective and enforceable absent the term "operation." Thus, the district court's severability determination conflicts with Arizona law.

The Arizona Supreme Court has held that "[w]hen a statute is so incomplete or unintelligible that [a court] cannot divine . . . how to implement it, it is invalid and unenforceable." *State ex rel. Brnovich v. City of Phoenix*, 249 Ariz. 239, 247 (2020). "[T]he duty imposed on a public official by statute must be prescribed in terms sufficient and definite to serve as a guide to those who have the duty imposed upon them." *Sw. Engineering Co. v. Ernst*, 79 Ariz. 403, 414 (1955) (cited in *City of Phoenix*, 249 Ariz. at 247). Where a statute is unintelligible, Arizona courts will not enforce it. *City of Phoenix*, 249 Ariz. at 248; *see also CAVCO Indus. v. Indus. Comm'n of Ariz.*, 129 Ariz. 429, 433 n.3 (1981) (acknowledging "the simple common law rule that courts will not apply unintelligible laws").

In the context of the district court's injunction here, the phrase "sex change" would be unintelligible absent the term "operation." The plain and ordinary meaning of the standalone phrase "sex change" is identical to that of "sex change operation":

"a medical operation, or series of operations, by which someone's body is changed to match their gender." *Sex Change*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/dictionary/english/sex change (last visited February 6, 2026). A synonym of "sex change" is "sex reassignment surgery." *Id.* In a vacuum, then, a statute permitting birth-certificate amendments in the event of a "sex change" would have identical effect to one permitting amendments in the event of a "sex change operation." *See id.*

But that meaning is unavailable here, because the district court has made clear that it intended to modify § 36-337(A)(3) by "striking" the term "operation." ER-10. This result leaves the phrase "sex change" entirely unintelligible: the Registrar cannot abide by the term's plain and ordinary meaning, but Arizona law does not provide any discernable definition different from the plain and ordinary meaning.[10] Under Arizona law, then, the standalone phrase "sex change" would be unenforceable. *City of Phoenix*, 249 Ariz. at 248. And for that reason, "sex change"

---

[10] The district court could not have cured this defect by inserting its own idiosyncratic definition of "sex change." Severability doctrine does not entitle "the court to dissect an unconstitutional measure and reframe a valid one out of it by inserting limitations it does not contain. This is legislative work beyond the power and function of the court." *Hill v. Wallace*, 259 U.S. 44, 70 (1922). Indeed, the unintelligibility doctrine exists precisely to prevent courts from "effectively 'legislat[ing]' by supplying material and necessary missing terms not suggested, either expressly or impliedly, by the statutory language." *City of Phoenix*, 249 Ariz. at 247.

cannot be severed from "operation." *Patel*, 251 Ariz. at 138. Thus, the district court's severability analysis violates Arizona law and mandates reversal.

## CONCLUSION

The Court should reverse the district court's judgment and remand with directions for the district court to grant summary judgment in favor of the Defendant. In the alternative, if the Court affirms the district court's merits determinations, the Court should vacate the permanent injunction and remand with instructions to enter a permanent injunction that prohibits the State Registrar from amending any individual's birth certificate pursuant to Ariz. Rev. Stat. § 36-337(A)(3) on the basis that the individual has undergone a sex change operation.

Dated: February 13, 2026        Respectfully submitted,

JAMES OTIS LAW GROUP, LLC

*/s/ Justin D. Smith*
Justin D. Smith
Michael C. Martinich-Sauter
530 Maryville Centre Drive, Suite 230
St. Louis, Missouri 63141
(816) 678-2103
Justin.Smith@james-otis.com

*Counsel for Intervenor-Defendants - Appellants*

## <u>CERTIFICATE OF RELATED CASES</u>

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

**9th Circuit Case Numbers:** 25-6970 c/w 25-6980

The undersigned attorney or self-represented party states the following:

[ **X** ]  I am unaware of any related cases currently pending in this court.

[  ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:


*/s/ Justin D. Smith*
February 13, 2026

## <u>CERTIFICATE OF COMPLIANCE</u>

### Form 8. Certificate of Compliance for Briefs

**9th Circuit Case Numbers:** 25-6970 c/w 25-6980

I am the attorney or self-represented party.

This brief contains **11,318** words, including **0** words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief:
[ **X** ] complies with the word limit of Cir. R. 32-1.
[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
[  ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because:
    [  ] it is a joint brief submitted by separately represented parties.
    [  ] a party or parties are filing a single brief in response to multiple briefs.
    [  ] a party or parties are filing a single brief in response to a longer joint brief.
[  ] complies with the length limit designated by court order dated _____.
[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

*/s/ Justin D. Smith*
February 13, 2026