**No. 25-6970**
**Oral Argument: April 14, 2026**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HELEN ROE, a minor, by and through parent and next friend Megan Roe; et al.,

*Plaintiffs - Appellees*,

v.

DEBORAH JOHNSTON, in her official capacity as State Registrar of Vital Records and Interim Director of the Arizona Department of Health Services,

*Defendant - Appellant.*

*Consolidated with*       **No. 25-6980**

HELEN ROE, a minor, by and through parent and next friend Megan Roe; et al.,

*Plaintiffs - Appellees*,

v.

DEBORAH JOHNSTON, in her official capacity as State Registrar of Vital Records and Interim Director of the Arizona Department of Health Services,

*Defendant - Appellee*,

v.

WARREN PETERSEN, President of the Arizona State Senate; STEVE MONTENEGRO, Speaker of the Arizona House of Representatives,

*Intervenor-Defendants - Appellants*.

On Appeal from the United States District Court
for the District of Arizona, No. 4:20-cv-00484

## INTERVENOR-DEFENDANTS - APPELLANTS' REPLY BRIEF

Michael C. Martinich-Sauter
JAMES OTIS LAW GROUP, LLC
530 Maryville Centre Drive, Suite 230
St. Louis, Missouri 63141
(314) 949-3018
michael.martinich-sauter@james-otis.com
*Counsel for Intervenor-Defendants - Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................. iii

INTRODUCTION ............................................................................1

ARGUMENT ..................................................................................2

I.  Section 36-337(A)(3) Does Not Violate the Equal Protection Clause. ..........2

    A.  *United States v. Skrmetti* requires application of rational basis review. ..................................................................................2

    B.  Birth-certificate corrections under § 36-323(C) are irrelevant. ...........8

II.  Section 36-337(A)(3) Easily Satisfies Rational-Basis Review and Would Also Satisfy Heightened Scrutiny....................................................9

    A.  Section 36-337(A)(3) is rationally related to important government interests of identity verification and fraud prevention. .......................10

    B.  Section 36-337(A)(3) is rationally related to the important government interest of record stability. ..................................................15

    C.  Section 36-337(A)(3) would also satisfy heightened scrutiny if that standard were to apply. ....................................................16

III.  Plaintiffs' Informational-Privacy Theory Lacks Merit..............................17

    A.  Section 36-337(A)(3) does not require the disclosure of any person's birth certificate under any circumstances...........................................17

    B.  Plaintiffs have not established the *facial* invalidity of § 36-337(A)(3). ..................................................................................20

IV.  Section 36-337(A)(3) Does Not Compel Unwanted Medical Treatment, Nor Does It Violate the Unconstitutional-Conditions Doctrine. ..........................22

V.  Plaintiffs Cannot Rely on a Purported "Right to Individual Liberty and Autonomy."..............................................................................26

i

VI.    Plaintiffs' Arguments Regarding the Permanent Injunction Lack Merit.......27

CONCLUSION ..................................................................................................29

CERTIFICATE OF COMPLIANCE .................................................................31

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Allied Concrete & Supply Co. v. Baker*,
    904 F.3d 1053 (9th Cir. 2018)............................................................10, 12

*Am. Soc'y of Journalists & Authors, Inc. v. Bonta*,
    15 F.4th 954 (9th Cir. 2021)...............................................................16

*Anderson v. Crouch*,
    --- F.4th ---, 2026 WL 667919 (4th Cir. Mar. 10, 2026).............................. 4-5

*Apao v. Bank of N.Y.*,
    324 F.3d 1091 (9th Cir. 2003)..............................................................18

*Armour v. City of Indianapolis*,
    566 U.S. 673 (2012)........................................................................12, 14

*Bell v. Wolfish*,
    441 U.S. 520 (1979).........................................................................11

*Bingham v. Holder*,
    637 F.3d 1040 (9th Cir. 2011)............................................................ 24-25

*Borja v. Nago*,
    115 F.4th 971 (9th Cir. 2024)............................................................ 11-12

*Chem. Waste Mgmt., Inc. v. EPA*,
    56 F.3d 1434 (D.C. Cir. 1995) ...........................................................21

*Christian v. Randall*,
    516 P.2d 132 (Colo. App. 1973) ........................................................28

*Corbitt v. Sec'y of the Ala. L. Enf't Agency*,
    115 F.4th 1335 (11th Cir. 2024)..........................................................10, 14

*Dobbs v. Jackson Women's Health Org.*,
    597 U.S. 215 (2022).........................................................................27

iii

*F.C.C. v. Beach Commc'ns, Inc.*,
　508 U.S. 307 (1993)................................................................10, 14, 16

*Gore v. Lee*,
　107 F.4th 548 (6th Cir. 2024)....................................... 11-13, 16-18

*Heller v. Doe by Doe*,
　509 U.S. 312 (1993)...............................................................15

*Hillcrest Prop., LLC v. Pasco Cnty.*,
　915 F.3d 1292 (11th Cir. 2019)........................................ 23-24

*In re Crawford*,
　194 F.3d 954 (9th Cir. 1999)...............................................18

*In re Michaela Lee R.*,
　756 A.2d 214 (Conn. 2000) .......................................... 18-19

*Inscoe v. Ishee*,
　915 S.E.2d 448 (N.C. App. 2025)..........................................6

*Johnson v. Poway Unified Sch. Dist.*,
　658 F.3d 954 (9th Cir. 2011)...............................................16

*K. v. Health Div., Dep't of Hum. Res.*,
　560 P.2d 1070 (Or. 1977).....................................................13

*Kadel v. Folwell*,
　100 F.4th 122 (4th Cir. 2024)................................................6

*Koontz v. St. Johns River Water Mgmt. Dist.*,
　570 U.S. 595 (2013) ...................................................... 23-24

*L.A. v. Braun*,
　No. 1:25-cv-00596, 2025 WL 2894154 (S.D. Ind. Sept. 26, 2025) ...............8

*Lange v. Houston Cnty.*,
　152 F.4th 1245 (11th Cir. 2025)............................................5

iv

*Latta v. Otter*,
  771 F.3d 456 (9th Cir. 2014)....................................................................5

*Olson v. California*,
  104 F.4th 66 (9th Cir. 2024)...................................................... 10-11, 15

*Pena v. Lindley*,
  898 F.3d 969 (9th Cir. 2018).................................................................13

*Perry v. Sindermann*,
  408 U.S. 593 (1972)...............................................................................24

*Phillips v. Martin Marietta Corp.*,
  400 U.S. 542 (1971)..................................................................................5

*Porter v. Martinez*,
  68 F.4th 429 (9th Cir. 2023)..................................................... 16-17

*Pritchard on behalf of C.P. v. Blue Cross Blue Shield of Illinois*,
  159 F.4th 646 (9th Cir. 2025)...................................................... 4-5

*Project Veritas v. Schmidt*,
  125 F.4th 929 (9th Cir. 2025).............................................................29

*Raich v. Gonzales*,
  500 F.3d 850 (9th Cir. 2007)...............................................................26

*Raidoo v. Moylan*,
  75 F.4th 1115 (9th Cir. 2023)..................................................... 10-12

*Regino v. Staley*,
  133 F.4th 951 (9th Cir. 2025)..............................................................26

*RUI One Corp. v. City of Berkeley*,
  371 F.3d 1137 (9th Cir. 2004)..............................................................14

*Russell v. Gregoire*,
  124 F.3d 1079 (9th Cir. 1997)..............................................................22

v

*Rust v. Sullivan*,
    500 U.S. 173 (1991)............................................................25

*Simon v. City & Cnty. of San Francisco*,
    135 F.4th 784 (9th Cir. 2025)................................ 20-22

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*,
    108 F.4th 1128 (9th Cir. 2024)............................... 22-23

*Stitt v. Fowler*,
    145 S. Ct. 2840 (2025)........................................................8

*Tipsword v. Tipsword*,
    No. 1CA-CV-12-0066, 2013 WL 1320444 (Ariz. App. April 2, 2013).........28

*Transgender L. Ctr. v. United States Immigr. & Customs Enf't*,
    775 F. Supp. 3d 131 (D.D.C. 2025)....................................6

*United States v. Skrmetti*,
    605 U.S. 495 (2025).................................................. 2-8, 14

*United States v. Whitten*,
    610 F.3d 168 (2d Cir. 2010)............................................26

*Washington v. Glucksberg*,
    521 U.S. 702 (1997).................................................. 23-24

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008)........................................................21

*Wisconsin Educ. Ass'n Council v. Walker*,
    705 F.3d 640 (7th Cir. 2013)...........................................15

**Statutes and Regulations**

ARIZ. ADMIN. CODE R9-19-101 .........................................8

ARIZ. ADMIN. CODE R9-19-207(D).................................. 8-9

ARIZ. REV. STAT. § 15-828(A)(2).....................................19

ARIZ. REV. STAT. § 32-3230 ..................................................................26

ARIZ. REV. STAT. § 36-301(6) ............................................................. 8-9

ARIZ. REV. STAT. § 36-323(C)..................................................................9

ARIZ. REV. STAT. § 36-337(A)(3)................................................3, 5, 7, 17

OR. REV. STAT. § 432.290(5)..................................................................13

TENN. STAT. ANN. § 68-33-103(a)(1) ........................................................7

TENN. STAT. ANN. § 68-33-103(b)(2) ........................................................4

**Other Authorities**

Amicus Brief of interACT: Advocates for Intersex Youth, *Gloucester Cnty. Sch. Bd. v. G.G.*, No. 16-273 (U.S. Mar. 2, 2017), *at* https://www.scotusblog.com/wp-content/uploads/2017/03/16-273_bsac_interact_advocates_for_intersex_youth.pdf ..................................6

D. Douglas Cotton, Ulane v. Eastern Airlines*: Title VII and Transsexualism*, 80 NW. U. L. REV. 1037 (1986) ........................................................13

*Intersex*, Cleveland Clinic (July 19, 2022) ................................................6

Katheryn D. Katz, *Majoritarian Morality and Parental Rights*, 52 ALB. L. REV. 405 (1988)..................................................................28

vii

## <u>INTRODUCTION</u>

Birth certificates are official government records generated by the State in order to facilitate the State's own administrative purposes. This case addresses whether the Constitution requires the federal courts to micromanage what information States include in those state records.

The Supreme Court's recent decision in *United States v. Skrmetti* demonstrates that the Equal Protection Clause does not authorize that micromanagement. *Skrmetti* dictates that rational basis review applies here. Plaintiffs all but ignore rational-basis review, and their cursory arguments regarding that standard conflict with deeply entrenched precedent.

The Due Process Clause also does not require federal courts to micromanage the contents of state birth certificates. With regard to informational privacy, Plaintiffs ignore the fact that Arizona Revised Statute § 36-337(A)(3)—the sole statute challenged in this case—does not require anyone to disclose their birth certificates under any circumstances at all. They similarly ignore the fact that the statute is indisputably valid under at least some circumstances, which defeats their facial challenge.

Plaintiffs' remaining due-process arguments rest on the newfound claim that § 36-337(A)(3) violates the unconstitutional-conditions doctrine. There is a reason that Plaintiffs did not raise that doctrine below and that the district court did not rely

1

on it: the unconstitutional-conditions doctrine is inapplicable for several independent reasons.

Section 36-337(A)(3) does not violate the Constitution. The Court should reverse the district court's judgment.

## ARGUMENT

I.      **Section 36-337(A)(3) Does Not Violate the Equal Protection Clause.**

  A.      ***United States v. Skrmetti* requires application of rational basis review.**

Plaintiffs seek to distinguish *United States v. Skrmetti* on three grounds. None has merit. First, Plaintiffs assert that, "[w]hereas the group of people who 'might seek puberty blockers or hormones' for various medical conditions included 'both transgender and nontransgender individuals' in *Skrmetti*, the group of people who would seek a 'sex change operation' under Section (A)(3) includes *only* transgender people." Response Brief at 33. Plaintiffs misunderstand *Skrmetti*'s analysis.

In *Skrmetti*, the Supreme Court began by emphasizing that the challenged Tennessee statute "divides minors into two groups: those who might seek puberty blockers or hormones to treat the excluded diagnoses, and those who might seek puberty blockers or hormones to treat other conditions." 605 U.S. 495, 519 (2025). The Supreme Court then evaluated whether there was an "identity" between transgender status and the contours of those two groups. *Id.* The Supreme Court observed that "the first group includes only transgender individuals; the second

2

group, in contrast, encompasses both transgender and nontransgender individuals." *Id.* For this reason, the Supreme Court found a "lack of identity" between the statutory classification and transgender status, and the Court therefore found that the statute did not classify on the basis of transgender status. *Id.* (quotation omitted).

Precisely the same analysis applies here. Section 36-337(A)(3) divides people born in Arizona into two groups: those who have undergone a sex change operation and those who have not. *See* ARIZ. REV. STAT. § 36-337(A)(3). According to Plaintiffs,[1] "the first group"—*i.e.*, individuals who have undergone a sex change operation—"includes only transgender individuals." *Skrmetti*, 605 U.S. at 519. In contrast, "the second group"—*i.e.*, individuals who have not undergone a sex change operation—"encompasses both transgender and nontransgender individuals." *Id.* Thus, just as in *Skrmetti*, "there is a lack of identity between transgender status" and the classification drawn by § 36-337(A)(3). *Id.* (quotation omitted). For this reason, § 36-337(A)(3) does not classify based on transgender status, and as a result the statute need only satisfy rational-basis review. *See id.*

Second, Plaintiffs insist that *Skrmetti* does not apply because § 36-337(A)(3) "facially discriminates on a suspect basis." Response Brief at 33. By this, Plaintiffs seemingly refer to the fact that the statute references "sex change operation[s]," a

---

[1] As explained below, even this first group includes non-transgender individuals, further demonstrating the lack of identity between the statutory classification and transgender status.

3

procedure that Plaintiffs claim only transgender individuals could undergo. Even assuming that only transgender individuals could undergo that procedure, § 36-337(A)(3) does not facially discriminate based on transgender status. It is well-established that a statute does not discriminate on a protected basis (such as sex) merely because the text of the statute references that protected category. *Pritchard on behalf of C.P. v. Blue Cross Blue Shield of Illinois*, 159 F.4th 646, 670 (9th Cir. 2025); *see also Skrmetti*, 605 U.S. at 512 ("This Court has never suggested that mere reference to sex is sufficient to trigger heightened scrutiny.").

For example, the Fourth Circuit recently rejected an equal-protection challenge to a state Medicaid plan's exclusion of coverage for "sex change surgeries." *Anderson v. Crouch*, --- F.4th ---, 2026 WL 667919, at *1 (4th Cir. Mar. 10, 2026) (cleaned up). As the Fourth Circuit emphasized, the "[m]ere mention of ['sex change surgery'] does not constitute facial discrimination." *Id.* at *5 (citing *Skrmetti*, 605 U.S. at 511-12). Likewise, this Court has explained that "*Skrmetti* does not focus on whether anyone refers to transgender status." *Pritchard*, 159 F.4th at 670. Indeed, the statutory provision upheld in *Skrmetti* expressly tied its prohibitions to "gender dysphoria" and other diagnoses exclusively associated with transgender individuals. *See* TENN. STAT. ANN. § 68-33-103(b)(2); *Skrmetti*, 605 U.S. at 519. As a result, this Court has emphasized that courts "cannot distinguish *Skrmetti*" on the ground that a statute classifies based on a medical procedure that "equates with

4

transgender status," since "the statute in *Skrmetti* also targets care" exclusively associated with transgender individuals. *Pritchard*, 159 F.4th at 671; *compare Lange v. Houston Cnty.*, 152 F.4th 1245, 1252-53 (11th Cir. 2025) (en banc). Ultimately, the relevant question is not whether § 36-337(A)(3) uses the phrase "sex change operation" but instead whether the use of that phrase leads to a statutory classification on the basis of transgender status. *See Anderson*, 2026 WL 667919, at *3 ("[O]ur task is not simply to note the words used in a law, but to determine what function those words serve in that law's operation."). As described above, § 36-337(A)(3) simply does not classify on the basis of transgender status. *See Skrmetti*, 605 U.S. at 519.

*Phillips v. Martin Marietta Corp.*, 400 U.S. 542 (1971) (per curiam)—cited by Plaintiffs—does not change this analysis. As an initial matter, *Phillips* did not even involve an equal-protection claim. *See id.* at 543. More importantly, *Phillips* addressed a situation in which a company maintained "one hiring policy for women and another for men—each having pre-school-age children." *Id.* at 544. *Phillips* thus involved a policy that expressly classified directly on the basis of sex, applying "differential treatment of similarly-situated sex-defined subgroups." *Latta v. Otter*, 771 F.3d 456, 484 (9th Cir. 2014). Here, in contrast, § 36-337(A)(3) classifies based on whether an individual has undergone a sex change operation. Ariz. Rev. Stat. § 36-337(A)(3). And, as explained above, "there is a 'lack of identity' between

5

transgender status" and whether an individual has undergone a sex change operation. *Skrmetti*, 605 U.S. at 519.

Moreover, contrary to Plaintiffs' unsupported assertions, sex change operations are *not* limited exclusively to transgender individuals. Before the district court, Plaintiffs did not dispute that "[i]ndividuals born with an intersex condition . . . may seek out a 'sex change operation.'" 2-DirectorER-090, ¶ 14. "Being intersex . . . [is] not the same as being transgender." *Transgender L. Ctr. v. United States Immigr. & Customs Enf't*, 775 F. Supp. 3d 131, 147 (D.D.C. 2025) (citing *Intersex*, Cleveland Clinic (July 19, 2022)). One of the cases cited by Plaintiffs expressly discusses a situation in which an intersex individual underwent a sex change operation and thereafter amended the sex field on the individual's birth certificate. *See Inscoe v. Ishee*, 915 S.E.2d 448, 453, 462 (N.C. App. 2025); *see also* Amicus Brief of interACT: Advocates for Intersex Youth, *Gloucester Cnty. Sch. Bd. v. G.G.*, No. 16-273 (U.S. Mar. 2, 2017), at 28-30 (detailing intersex individual with a female birth certificate who later had a mastectomy to begin living as a boy).[2] Insurance policies even expressly contemplate sex change operations by intersex individuals. *See Kadel v. Folwell*, 100 F.4th 122, 135 (4th Cir. 2024), *cert. granted, judgment vacated,* 145 S. Ct. 2838 (2025) ("'Intersex Surgery, Male to Female,'

---

[2]    *Available    at*    https://www.scotusblog.com/wp-content/uploads/2017/03/16-273_bsac_interact_advocates_for_intersex_youth.pdf.

'Intersex Surgery, Female to Male'"). Despite Plaintiffs' protestations on appeal, it is undisputed that transgender individuals are *not* the only persons who may obtain a sex change operation. 2-DirectorER-090, ¶ 14. For this reason, this case involves an even *greater* "lack of identity" between the statutory classification and transgender status than *Skrmetti* did. *Skrmetti*, 605 U.S. at 519. And thus it is even clearer that rational-basis review applies to § 36-337(A)(3). *See id.*

Third, citing a footnote from *Skrmetti* that responds to a hypothetical posed by the dissent, Plaintiffs claim that § 36-337(A)(3) "regulate[s] a class of *persons* identified on the basis of a specified characteristic." Response Brief at 34 (quoting *Skrmetti*, 605 U.S. at 519 n.3). But just like the Tennessee statute upheld in *Skrmetti*, § 36-337(A)(3) does not "regulate" transgender persons. Both statutes regulate a set of *activities* conducted by persons *other than* the allegedly aggrieved transgender individual. In *Skrmetti*, the Tennessee statute "regulate[d] certain medical treatments," *Skrmetti*, 605 U.S. at 519 n.3, and the prohibition applied to "healthcare provider[s]" rather than to transgender patients, TENN. STAT. ANN. § 68-33-103(a)(1). Similarly, here, § 36-337(A)(3) regulates the process of amending birth certificates, and the statutory provisions govern the conduct of the State Registrar, not Plaintiffs or other transgender individuals. ARIZ. REV. STAT. § 36-337(A)(3). Section 36-337(A)(3) is thus entirely different from the hypothetical floated by the *Skrmetti* dissent (and addressed in Footnote 3 of *Skrmetti*), in which an imagined

7

statute would have directly regulated certain women by expressly excluding them from health insurance coverage. *Skrmetti*, 605 U.S. at 519 n.3.

For the foregoing reasons, *Skrmetti* applies here and dictates that the Court must apply rational-basis review. This conclusion also accords with the Supreme Court's decision to vacate a similar gender-identity-based equal-protection challenge to a birth-certificate regime and remand for further consideration in light of *Skrmetti*. *See Stitt v. Fowler*, 145 S. Ct. 2840 (2025); *see also L.A. v. Braun*, No. 1:25-cv-00596, 2025 WL 2894154, at *7 (S.D. Ind. Sept. 26, 2025) (identifying the order in *Stitt* as a reason to apply *Skrmetti* to a similar equal-protection challenge).

## B.     Birth-certificate corrections under § 36-323(C) are irrelevant.

Plaintiffs claim that the birth-certificate *correction* process under § 36-323(C) unfairly favors nontransgender individuals. *See* Response Brief at 27, 34-35, 65-66. Tellingly, Plaintiffs have not challenged § 36-323(C) or its implementing regulations in this litigation. Section 36-323(C) is entirely irrelevant to Plaintiffs' claims. Under Arizona law, a "correction" is "a change made to a registered certificate because of a typographical error, including misspelling and missing or transposed letters or numbers." ARIZ. REV. STAT. § 36-301(6); *see also* ARIZ. ADMIN. CODE R9-19-101 (adopting definitions from § 36-301). Any person, regardless of sex or gender identity, may request a correction to his or her birth certificate because of a typographical error. *See* ARIZ. ADMIN. CODE R9-19-207(D).

8

But Plaintiffs do not claim that their birth certificates contain typographical errors. No person—whether male or female, transgender or not—can obtain a correction absent "a typographical error." ARIZ. REV. STAT. § 36-301(6); *see also* ARIZ. REV. STAT. § 36-323(C). The corrections statute thus treats all individuals identically, regardless of transgender status. A nontransgender individual cannot change the "sex" field on her birth certificate pursuant to § 36-323(C) any more readily than could a transgender individual. Plaintiffs are thus simply wrong when they assert that § 36-323(C) "provides a different, far easier path to non-transgender people who wish to change the sex listed on their birth certificate." Response Brief at 34. The path offered by § 36-323(C) is extremely narrow, and that narrow path is equally open to transgender and nontransgender individuals alike. ARIZ. REV. STAT. § 36-323(C); ARIZ. ADMIN. CODE R9-19-207(D).

## II. Section 36-337(A)(3) Easily Satisfies Rational-Basis Review and Would Also Satisfy Heightened Scrutiny.

Plaintiffs devote only three sentences to why § 36-337(A)(3) allegedly fails rational-basis review. Response Brief at 45. Contrary to Plaintiffs' conclusory assertions, § 36-337(A)(3) easily satisfies rational-basis review. *See* Parts II.A, II.B, *infra*. The statute would also satisfy heightened review if that standard were to apply. *See* Part II.C, *infra*.

**A.      Section 36-337(A)(3) is rationally related to important government interests of identity verification and fraud prevention.**

Neither Plaintiffs nor the Amici States dispute that the State has a legitimate interest in reliably verifying an individual's identity and preventing fraud. *See* Amici States Brief at 16. Thus, the Court need only consider whether § 36-337(A)(3)'s classification "is rationally related to this stated purpose." *Olson v. California*, 104 F.4th 66, 78 (9th Cir. 2024). It is. *See Corbitt v. Sec'y of the Ala. L. Enf't Agency*, 115 F.4th 1335, 1349 (11th Cir. 2024) (finding that requiring a sex change operation before changing the "sex" field on a driver's license constituted "a 'rational line' to draw"); *see also* Opening Brief at 16-24. The arguments presented by Plaintiffs and the Amici States lack merit.

First, Plaintiffs and the Amici States object that there is no evidence demonstrating that § 36-337(A)(3) advances the legislative interests in objectively verifying identity and preventing fraud. *See* Response Brief at 40; Amici States Brief at 18. But under rational-basis review, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993). "[T]he state is not required to produce empirical evidence to support the statute; it is Plaintiffs' burden to negate conceivable justifications." *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1065 (9th Cir. 2018). "The legislature does not need proof that the statute will achieve its asserted purpose[.]" *Raidoo v. Moylan*,

10

75 F.4th 1115, 1121 (9th Cir. 2023). "To consider whether the law is actually effective in achieving its stated goals would require us to second guess a legitimate 'legislative choice' and engage in 'courtroom fact-finding.'" *Olson*, 104 F.4th at 80 (citation omitted). "The Equal Protection Clause does not give [a court] license to do so." *Id.* Thus, Plaintiffs' insistence that no evidence supports the legislative choices underlying § 36-337(A)(3) has no relevance to the rational-basis inquiry.

Second, both Plaintiffs and the Amici States claim that there are other, better ways to advance the State's interests. *See* Response Brief at 42; Amici States Brief at 18. But rational-basis review "does not require States to show that a classification is the only way, the best way, or even the most defensible way to achieve their interests." *Gore v. Lee*, 107 F.4th 548, 561 (6th Cir. 2024). Nor does it allow the federal judiciary "to substitute [its] personal notions of good public policy for those of [the legislature]." *Borja v. Nago*, 115 F.4th 971, 983 (9th Cir. 2024) (quotation omitted). "Governmental action does not have to be the only alternative or even the best alternative for it to be reasonable, to say nothing of constitutional." *Bell v. Wolfish*, 441 U.S. 520, 542 n.25 (1979). Thus, it is irrelevant whether the State could have achieved its aims through other or better means.

Plaintiffs point to an administrative agency policy that allows amendments of the "sex" field on an Arizona driver's license even where an individual has not undergone a sex change operation. *See* Response Brief at 42. That administrative

11

policy is irrelevant to rational-basis review, because "the legislature is not bound to accept the findings of an administrative agency." *Allied Concrete*, 904 F.3d at 1063. Nor does the fact that an administrative agency adopted a different policy regarding a different form of government records—that serve different governmental purposes—mean that § 36-337(A)(3) fails to rationally serve its identity-verification and fraud-prevention purposes. Under rational-basis review, it does not matter that a law "could have been drafted more narrowly or differently." *Raidoo*, 75 F.4th at 1121.

For their part, the Amici States contend that their experience "reflects that there are a range of ways" to achieve the important governmental interests underlying § 36-337(A)(3). Amici States Brief at 18. But as noted above, the fact that Arizona could have achieved its legislative aims through different means has no bearing on the rational-basis inquiry. *See Borja*, 115 F.4th at 983; *Gore*, 107 F.4th at 561. "[E]ven if [Amici States] have found a superior system, the Constitution does not require [Arizona] to draw the perfect line nor even to draw a line superior to some other line it might have drawn. It requires only that the line actually drawn be a rational line." *Armour v. City of Indianapolis*, 566 U.S. 673, 685 (2012).

In addition, the fact that "the States' practices are all over the map" on this issue counsels a fair degree of humility in declaring definitively how other States should approach it. *Gore*, 107 F.4th at 553 (surveying state birth certificate laws); *cf.*

Amici States Brief at 3-7, 18, 21. "In interpreting an essentially unamendable constitution, the federal courts must be careful about freezing in time just one new approach to a difficult policy issue, particularly one that is steadily evolving and one that turns on each State's plenary power to decide how to speak for itself about the matter." *Gore*, 107 F.4th at 558.

The fact that various States' approaches to this issue have evolved further counsels against judicial intervention. Amicus Oregon's experience is instructive. Almost a half-century ago, the Supreme Court of Oregon rejected a petition by a "transsexual person" to change the sex on a birth certificate after a sex change operation because the amendment was not permitted by existing state law. *K. v. Health Div., Dep't of Hum. Res.*, 560 P.2d 1070, 1072 (Or. 1977). The court held "that this is a matter of public policy to be decided by the Oregon legislature." *Id.* The Oregon legislature responded, like Arizona, by "permit[ting] the sex designation on a birth certificate to be changed after sex reassignment surgery." D. Douglas Cotton, Ulane v. Eastern Airlines*: Title VII and Transsexualism*, 80 Nw. U. L. Rev. 1037, 1037 n.1 (1986) (citing Or. Rev. Stat. § 432.290(5)). After decades following that approach, in 2017, Oregon again changed course to allow birth certificate sex to be changed without any evidence. *See Gore*, 107 F.4th at 552.

The Court's role "is not to re-litigate a policy disagreement that the [Arizona] legislature already settled." *Pena v. Lindley*, 898 F.3d 969, 980 (9th Cir. 2018).

"'[R]eform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others.'" *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1155 (9th Cir. 2004) (quoting *Beach Commc'ns*, 508 U.S. at 316).

Third, the Amici States argue that § 36-337(A)(3) "*could* undermine identity verification" because "[t]ransgender people *can* present and be perceived as a different gender than the sex assigned at birth on their birth certificate." Amici States Brief at 17 (emphases added). But it is undisputed that not all transgender individuals align their appearance to match their gender identity. 2-DirectorER-090, ¶ 13. Thus, an identity-verification system based on self-reported gender identity (as championed by the Amici States) certainly is no more perfect than the system adopted by Arizona. In any event, as noted above, the Equal Protection Clause does not demand perfection, only rationality. *Armour*, 566 U.S. at 685. In *Corbitt*, the Eleventh Circuit rejected an argument similar to the one offered by Amici States here, "declin[ing] to second-guess Alabama's choice to use 'genitals' rather than 'perception' as the touchstone for its Policy." *Corbitt*, 115 F.4th at 1349. This Court should do the same. The Court should "leave questions regarding [§ 36-337(A)(3)'s] policy to the people [of Arizona], their elected representatives, and the democratic process." *Skrmetti*, 605 U.S. at 525.

14

**B.** **Section 36-337(A)(3) is rationally related to the important government interest of record stability.**

Plaintiffs do not deny that the stability of vital records is an important government interest. *See* Response Brief at 40-42. Plaintiffs' principal objection is that this interest was not preserved. *Id.* But under rational basis review, the Court "may consider any 'purposes the legislature, litigants, or district court have espoused,' but [it is] not limited to those reasons—[it] may consider '*any* other rational purposes *possibly* motivating enactment of the challenged statute.'" *Olson*, 104 F.4th at 78 (citation omitted) (emphasis in original). That includes legislative rationales "raised for the first time on appeal." *Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 671 (7th Cir. 2013) (Hamilton, J., concurring in the judgment in part and dissenting in part).

Plaintiffs again incorrectly claim that "evidence" is needed in the "record." Response Brief at 41. A State "has no obligation to produce evidence to sustain the rationality of a statutory classification." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993). Instead, "a classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Id.* (citation omitted). While Plaintiffs claim no evidence exists that amending birth certificates will impose costs, Response Brief at 41, Amici States admit that costs exist but attempt to downplay them as minor, Amici States

15

Brief at 23-24. In addition, common sense dictates that multiple birth certificate amendments will create confusion, cost, and administrative burdens.

Plaintiffs have failed to meet their burden "to negative every conceivable basis which might support" the classification. *Beach Commc'ns*, 508 U.S. at 315. "So long as the law rests upon some rational basis—as it does here—[the Court's] inquiry is at an end." *Am. Soc'y of Journalists & Authors, Inc. v. Bonta*, 15 F.4th 954, 965 (9th Cir. 2021).[3]

### C. Section 36-337(A)(3) would also satisfy heightened scrutiny if that standard were to apply.

If the Court applies heightened scrutiny, Plaintiffs do not dispute that identity verification, fraud prevention, and the stability of vital records are important governmental objectives. Plaintiffs also do not dispute that the 60-year history of Arizona's law and the consensus of States today following the same approach provide sufficient evidence to justify Arizona's law. *See Porter v. Martinez*, 68 F.4th

---

[3] The principles underlying the government-speech doctrine further bolster this conclusion. *See* Opening Brief at 22. Plaintiffs' argument that birth certificates are "not solely government speech" closely mirrors those presented by the dissent in *Gore*. *Compare* Response Brief at 43-44 *with Gore*, 107 F.4th at 576 (White, J., dissenting). But as the *Gore* majority explained, the State's decision to record objectively observable sex rather than preferred gender identity in the State's own records constitutes "a nondiscriminatory form of government speech" that "does not violate the Fourteenth Amendment." *Gore*, 107 F.4th at 559. Plaintiffs "have no personal interest in government speech on which to base an equal protection claim." *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 970 (9th Cir. 2011).

429, 445 (9th Cir. 2023). In addition, Plaintiffs do not respond to the Legislative Leaders' tailoring argument. *See* Opening Brief at 27.

### III. Plaintiffs' Informational-Privacy Theory Lacks Merit.

Plaintiffs' informational-privacy theory lacks merit for at least two independent reasons. First, § 36-337(A)(3) does not require the disclosure of a birth certificate under any circumstances. *See* Part III.A, *infra*. Second, even assuming that the statute disclosed some individuals' transgender status under some circumstances, Plaintiffs cannot show that the statute does so under *all* circumstances. Thus, Plaintiffs cannot prevail on their facial challenge. *See* Part III.B, *infra*.

#### A. Section 36-337(A)(3) does not require the disclosure of any person's birth certificate under any circumstances.

As the Legislative Leaders explained in their opening brief, § 36-337(A)(3) does not require transgender individuals to disclose their birth certificates under any circumstances. Opening Brief at 29-31. Instead, the statute simply prescribes circumstances under which the State Registrar must amend a birth certificate. *See* ARIZ. REV. STAT. § 36-337(A)(3). While Plaintiffs may choose to disclose their birth certificates to third parties, § 36-337(A)(3) does not compel them to do so. This fact alone defeats Plaintiffs' informational-privacy claim. *See Gore*, 107 F.4th at 563.

In response, Plaintiffs claim that "they have no choice but to use government documents in certain circumstances, like enrolling in school." Response Brief at 53.

17

While Plaintiffs insist that they have "no choice" but to disclose their birth certificates to third parties, they do not attribute this lack of choice to state action.[4] A due-process violation requires state action. *See, e.g.*, *Apao v. Bank of N.Y.*, 324 F.3d 1091, 1094-95 (9th Cir. 2003) (rejecting due-process claim for lack of state action). Where a plaintiff voluntarily discloses sensitive information, that voluntary disclosure does not violate the right to informational privacy. *See Gore*, 107 F.4th at 563.

For example, in *In re Michaela Lee R.*, the Connecticut Supreme Court considered an informational-privacy claim arising from the use of a minor's birth certificate for schooling purposes. 756 A.2d 214 (Conn. 2000). In that case, a minor needed to disclose her birth certificate to schools in order to apply for admission. *See id.* at 232. The minor contended that her birth certificate contained sensitive private information and that the inclusion of that information on her birth certificate

---

[4] Plaintiffs have not pointed to any other Arizona statute or regulation that mandates the disclosure of their birth certificates or transgender status. Even if such a statute were to exist, Plaintiffs should have directed their informational-privacy claim at the statute requiring disclosure, not § 36-337(A)(3). Doing so would have permitted the federal courts to consider the governmental interests served by the challenged disclosure—an inquiry essential to resolving an informational-privacy claim. "The right to informational privacy . . . is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest. [This Court's] precedents demand that [courts] engage in the delicate task of weighing competing interests to determine whether the government may properly disclose private information." *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999) (quotations omitted).

thereby violated her right to informational privacy. *Id.* The Connecticut Supreme Court rejected this claim, explaining that the minor, "not the state, provided the birth certificate as part of [her] application to various schools. The state in no way forced [her] to make this information public or published the information without her permission." *Id.* Similarly, here, if Plaintiffs (or their parents) share their birth certificates with schools for registration purposes, they do so voluntarily. Section 36-337(A)(3) does not require them to do so.

In brief a footnote, Plaintiffs dismiss *Michaela Lee R.* on the ground that, in Connecticut, "disclosing information on birth certificates is *not* necessary . . . to obtain any important benefit." Response Brief at 54 n.16. But Arizona law expressly permits a student to register for school without presenting a birth certificate. ARIZ. REV. STAT. § 15-828(A)(2) (permitting the use of "[o]ther reliable proof of the pupil's identity and age" rather than a birth certificate); *see also* ER-78, ¶ 70 (asserting that Plaintiff D.T.'s school "allowed his parents . . . to correct D.T.'s school records" without an amended birth certificate reflecting D.T.'s gender identity). In addition, the "benefit" at issue in *Michaela Lee R.* was essentially identical to the principal example on which Plaintiffs rely: registering a minor for schooling. Plaintiffs have presented no principled basis to distinguish *Michaela Lee R.*, nor have they attempted to show how the Connecticut Supreme Court erred.

19

Plaintiffs have failed to show that § 36-337(A)(3) violates the right to informational privacy under any circumstances.

**B.** **Plaintiffs have not established the *facial* invalidity of § 36-337(A)(3).**

Even if § 36-337(A)(3) were to disclose the transgender status of some individuals under some circumstances, Plaintiffs' facial challenge to the statute would still fail, because Plaintiffs have not shown that the statute violates informational privacy in *all* of its applications. To prevail on their facial challenge, Plaintiffs "must establish that no set of circumstances exists under which [§ 36-337(A)(3)] would be valid. In other words, Plaintiffs must show that the [statute] is unconstitutional in every conceivable application." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (cleaned up).

In their Opening Brief, the Legislative Leaders identified several readily foreseeable circumstances in which § 36-337(A)(3) plainly would not disclose individuals' transgender status, even under Plaintiffs' overbroad informational-privacy theory. Opening Brief at 34-35. For example, some transgender individuals have already disclosed their transgender status to those third parties with whom they might share their birth certificate (such as school officials). Under those circumstances, providing a birth certificate listing the individual's sex observed at birth would not disclose that individual's transgender status to a third party—the third party would already have known that information. Similarly, for transgender

20

individuals who have undergone a sex change operation and obtained an amendment under § 36-337(A)(3), their amended birth certificate would not disclose their transgender status. Under these and other circumstances, § 36-337(A)(3) could not conceivably violate the right to informational privacy. Opening Brief at 33-35.

Plaintiffs offer two responses, neither of which has merit. First, Plaintiffs assert that "on facial challenges, courts may not go beyond the statute's facial requirements and speculate about hypothetical or imaginary cases." Response Brief at 61 (cleaned up; quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)). Plaintiffs misunderstand the law. A court resolves a facial challenge by considering whether there is any "*conceivable* application" of the statute that is permissible. *Simon*, 135 F.4th at 797 (cleaned up; emphasis added). In searching for "conceivable" constitutional applications, *id.*, courts necessarily must consider "hypothetical scenario[s]," *Chem. Waste Mgmt., Inc. v. EPA*, 56 F.3d 1434, 1437 (D.C. Cir. 1995). *Washington State Grange*—cited by Plaintiffs—does not hold otherwise. The language quoted by Plaintiffs counsels against considering "'hypothetical' or 'imaginary' cases" in which a statute is *invalid*. 552 U.S. at 450. It did not disturb the well-established rule—which *Washington State Grange* itself recites—that "a plaintiff can only succeed in a facial challenge by establishing that no set of circumstances exists under which the Act would be valid." *Id.* at 449 (cleaned up).

Second, Plaintiffs insist that "there is no requirement of absolute secrecy for the right to informational privacy to attach." Response Brief at 61. But even if this were true, Plaintiffs misunderstand the relevant hypotheticals. Where a transgender individual has already disclosed her transgender status to the person to whom she is providing her birth certificate, the birth certificate indisputably does not reveal any sensitive information. That disclosure would already have occurred, and thus informational privacy would not apply. *See Russell v. Gregoire*, 124 F.3d 1079, 1094 (9th Cir. 1997); *see also* Opening Brief at 34-35. Because § 36-337(A)(3) is valid in at least some conceivable applications, Plaintiffs' facial challenge fails. *Simon*, 135 F.4th at 797.

## IV. Section 36-337(A)(3) Does Not Compel Unwanted Medical Treatment, Nor Does It Violate the Unconstitutional-Conditions Doctrine.

As the Legislative Leaders explained in their Opening Brief, § 36-337(A)(3) does not require any person to undergo an unwanted sex change operation. Opening Brief at 35-38. Plaintiffs do not directly dispute this fact but instead pivot to a newfound claim that § 36-337(A)(3) violates the unconstitutional-conditions doctrine. *See* Response Brief at 58-60. "Under the well-settled doctrine of unconstitutional conditions, the government may not require a person to give up a constitutional right in exchange for a discretionary benefit." *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1136 (9th Cir. 2024) (cleaned up). Plaintiffs' new theory fails for at least three independent reasons.

22

First, the Supreme Court has directed that the unconstitutional-conditions doctrine applies only to enumerated constitutional rights, not unenumerated rights like those at issue here. The unconstitutional-conditions doctrine "vindicates the Constitution's *enumerated* rights." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013) (emphasis added). The "doctrine forbids burdening the Constitution's *enumerated* rights by coercively withholding benefits from those who exercise them." *Id.* at 606 (emphasis added); *see also Stavrianoudakis*, 108 F.4th at 1137 (quoting the same language from *Koontz*). If a plaintiff relies on *unenumerated* rights allegedly protected under substantive due process, however, the unconstitutional-conditions doctrine does not apply. *Hillcrest Prop., LLC v. Pasco Cnty.*, 915 F.3d 1292, 1299 (11th Cir. 2019) (rejecting unconstitutional-conditions claim that relied on "substantive due process, which is unenumerated"). This limitation makes sense in light of the Supreme Court's directive to tread carefully in the area of substantive due process, where "guideposts for responsible decisionmaking . . . are scarce and open-ended." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (quotation omitted).

Here, Plaintiffs' unconstitutional-conditions theory rests entirely on purported burdens of unenumerated rights allegedly protected by substantive due process, including asserted rights to privacy, autonomy, and bodily integrity. *See* Response Brief at 55-60. These asserted rights do not appear in the text of the Constitution.

23

Likewise, the leading case underlying Plaintiffs' argument—*Washington v. Glucksberg*—"deal[t] with a claim to . . . unenumerated rights." 521 U.S. at 755-56 (Souter, J., concurring in the judgment). Because Plaintiffs' unconstitutional-conditions theory rests entirely on unenumerated rights, it necessarily fails. *See Hillcrest Prop.*, 915 F.3d at 1299; *see also Koontz*, 570 U.S. at 604.

Second, Plaintiffs misconstrue the "benefit" offered by the State. The unconstitutional-conditions doctrine does not prescribe which benefits a State must provide. Instead, the doctrine dictates that *if* a State chooses to offer a particular benefit, the State generally cannot condition receipt of that benefit on the waiver of an enumerated constitutional right. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

Here, the benefit that Arizona has chosen to provide is a birth certificate that reflects an individual's sex as observable through objectively verifiable means. *See* Opening Brief at 4-5. Plaintiffs do not dispute that they have already obtained that benefit, that is, that they have already obtained a birth certificate reflecting their objectively observable sex. To the contrary, they have filed this litigation precisely because they object to such a birth certificate. Where a party can obtain a government benefit without forgoing her constitutional rights, the unconstitutional-conditions doctrine does not apply. *Bingham v. Holder*, 637 F.3d 1040, 1046 (9th Cir. 2011) (rejecting claim that a party's right to enter the United States was conditioned on

24

waiver of constitutional rights, because the party could obtain a visa without waiving those rights).

The real crux of Plaintiffs' due-process claim is that they desire a different benefit that Arizona has *not* opted to offer: a birth certificate that reflects their preferred gender identity rather than their objectively observable sex. But that theory does not implicate the unconstitutional-conditions doctrine, because Arizona does not offer that "benefit" to anyone. Nor have Plaintiffs demonstrated that a freestanding right to such a benefit exists. *See* Opening Brief at 31-33; Part IV, *infra*.

Third, limiting amendments under § 36-337(A)(3) to individuals who have undergone a sex change operation is rationally related to the purposes of the statutory regime. "[T]he government may condition the grant of a discretionary benefit on a waiver of rights if the condition is rationally related to the benefit conferred." *Bingham*, 637 F.3d at 1046 (quotation omitted). Here, § 36-337(A)(3)'s limitation "is not denying a benefit to anyone, but is instead simply insisting that [birth certificates] be [used] for the purposes for which they were authorized." *Rust v. Sullivan*, 500 U.S. 173, 196 (1991). As relevant here, those purposes are reflecting an individual's objectively observable sex, not the individual's preferred gender identity.

Ultimately, Plaintiffs' newfound unconstitutional-conditions theory clashes with the core premise of the doctrine. The doctrine exists to prevent the government

from doing "indirectly what it cannot do directly." *United States v. Whitten*, 610 F.3d 168, 194 (2d Cir. 2010). But Arizona does not seek to induce its citizens to undergo sex change operations, either directly or indirectly. To the contrary, Arizona has prohibited minors like Plaintiffs from undergoing sex change operations. *See* ARIZ. REV. STAT. § 32-3230. Plaintiffs' argument thus falls far afield of the rationale underlying the unconstitutional-conditions doctrine. The Court should reject this new theory.

## V. Plaintiffs Cannot Rely on a Purported "Right to Individual Liberty and Autonomy."

Plaintiffs claim that § 36-337(A)(3) violates their "right to individual liberty and autonomy." Response Brief at 55. But Ninth Circuit and Supreme Court precedent expressly precludes reliance on such "sweeping generalizations," instead requiring courts to "adopt a narrow definition of the interest at stake." *Regino v. Staley*, 133 F.4th 951, 964 (9th Cir. 2025) (quotation omitted). "The Supreme Court has repeatedly rejected broad formulations of asserted fundamental rights, in favor of being more precise." *Id.* (quotation omitted); *see also* Opening Brief at 36 n.8 (collecting examples). Plaintiffs' invocations of "individual liberty" and "autonomy" do "not narrowly and accurately reflect the right that [they] seek[] to vindicate." *Raich v. Gonzales*, 500 F.3d 850, 864 (9th Cir. 2007). Stated more precisely, Plaintiffs assert a right to receive a government-issued birth certificate that reflects their preferred gender identity rather than their objectively observable sex. Plaintiffs

26

have not even attempted to show that such a right is deeply rooted in the Nation's history and traditions. It is not. *See* Opening Brief at 32-33.

Moreover, even if Plaintiffs' nebulous formulations were permissible, their claim would fail for a different reason. Reliance on broadly stated interests like "autonomy . . .prove[s] too much." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 257 (2022). Such interests, articulated "at a high level of generality, could license fundamental rights to illicit drug use, prostitution, and the like. None of these rights has any claim to being deeply rooted in history." *Id.* (internal citation omitted). Thus, Plaintiffs cannot invoke a "right to individual liberty and autonomy" to challenge § 36-337(A)(3).

## VI.    Plaintiffs' Arguments Regarding the Permanent Injunction Lack Merit.

Plaintiffs' arguments in favor of the district court's permanent injunction lack merit. First, Plaintiffs assert that the injunction accords with the intent of the Legislature. Response Brief at 70-72. But Plaintiffs do not cite any legislative text or legislative history to support this assertion. In contrast to Plaintiffs' *ipse dixit*, the Legislative Leaders pointed to specific aspects of the statutory text, grammar, and syntax to support their position on legislative intent. *See* Opening Brief at 39-49.

Second, Plaintiffs claim that the injunction limits birth-certificate amendments to objectively verifiable circumstances, *i.e.*, circumstances in which a doctor has provided a written statement substantiating an applicant's transgender

27

status. Response Brief at 71-72. But that does not advance the legislative intent—manifested in the statutory text—to ensure that the information in the "sex" field on a birth certificate can be objectively verified, if necessary, by physical examination or other objective means. Instead, the district court's injunction specifically intends to create situations in which birth certificates list a sex that differs from an individual's objectively observable sex.

Third, Plaintiffs contend that "the phrase 'sex change' can stand on its own under Arizona law." Response Brief at 73 (citing *Tipsword v. Tipsword*, No. 1CA-CV-12-0066, 2013 WL 1320444 (Ariz. App. April 2, 2013)). But *Tipsword* actually undermines their argument. *Tipsword* uses the phrase "sex change" to characterize the holding of a Colorado case, *Christian v. Randall*, involving a litigant who had undergone a "sex change." *See Tipsword*, 2013 WL 1320444, at \*2 ¶ 9 (citing *Christian*, 516 P.2d 132 (Colo. App. 1973)). Although the appellate decision in *Christian* vaguely refers to the litigant as "going through a transsexual change from female to male," 516 P.2d at 134, the trial court decision makes clear that the litigant had undergone a sex change operation, *see* Katheryn D. Katz, *Majoritarian Morality and Parental Rights*, 52 ALB. L. REV. 405, 457 n.372 (1988) (citing the original trial-court decision to show that the litigant "became a 'male' through surgery"). If anything, then, *Tipsword* confirms what the Legislative Leaders contend: when the

28

phrase "sex change" is used on its own, it means the same thing as "sex change operation." *See* Opening Brief at 47-49.

This fact, in turn, renders the district court's injunction unintelligible: because the injunction preserves the term "sex change" but clearly precludes the only discernable meaning of that phrase, public officials seeking to comply with the injunction lack any reliable guidance. *See id.* This outcome makes the district court's severability determination incompatible with Arizona's unintelligibility doctrine. *Id.* Plaintiffs seemingly claim that the injunction need not satisfy Arizona's unintelligibility doctrine but instead must abide only by Rule 65(d). Response Brief at 74. But this position ignores the fact that *Arizona* law governs the severability analysis. *See Project Veritas v. Schmidt*, 125 F.4th 929, 958 (9th Cir. 2025) (en banc).

Plaintiffs' arguments in support of the district court's remedy lack merit. Even if the Court were to affirm on the merits, the Court should vacate the permanent injunction and remand with instructions to enter a permanent injunction that prohibits the State Registrar from amending any individual's birth certificate pursuant to ARIZ. REV. STAT. § 36-337(A)(3) on the basis that the individual has undergone a sex change operation.

## CONCLUSION

The Court should reverse the district court's judgment.

29

Dated: March 27, 2026        Respectfully submitted,

JAMES OTIS LAW GROUP, LLC

*/s/ Michael C. Martinich-Sauter*
Michael C. Martinich-Sauter
530 Maryville Centre Drive, Suite 230
St. Louis, Missouri 63141
(314) 949-3018
michael.martinich-sauter@james-otis.com

*Counsel for Intervenor-Defendants - Appellants*

30

<u>**CERTIFICATE OF COMPLIANCE**</u>

**Form 8. Certificate of Compliance for Briefs**

**9th Circuit Case Numbers:** 25-6970 c/w 25-6980

I am the attorney or self-represented party.

This brief contains **6,821** words, including **0** words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief:
[ **X** ] complies with the word limit of Cir. R. 32-1.
[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because:
   [ ] it is a joint brief submitted by separately represented parties.
   [ ] a party or parties are filing a single brief in response to multiple briefs.
   [ ] a party or parties are filing a single brief in response to a longer joint brief.
[ ] complies with the length limit designated by court order dated _____.
[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


*/s/ Michael C. Martinich-Sauter*
March 27, 2026

31