**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

HELEN ROE, a minor, by and through her parent and next friend Megan Roe; JAMES POE, a minor, by and through his parent and next friend Laura Poe; CARL VOE, a minor, by and through his parent and next friend Rachel Voe,

*Plaintiffs - Appellees*,

v.

DEBORAH JOHNSTON, in her official capacity as State Registrar of Vital Records and Interim Director of the Arizona Department of Health Services,

*Defendant - Appellant*.

No. 25-6970

D.C. No. 4:20-cv-00484-JAS

OPINION

HELEN ROE, a minor, by and through her parent and next friend Megan Roe; JAMES POE, a minor, by and through his parent and next friend Laura Poe; CARL VOE, a minor, by and through his parent and

No. 25-6980

D.C. No. 4:20-cv-00484-JAS

next friend Rachel Voe,

*Plaintiffs - Appellees*,

v.

DEBORAH JOHNSTON, in her official capacity as State Registrar of Vital Records and Interim Director of the Arizona Department of Health Services,

*Defendant - Appellee*,

v.

WARREN PETERSEN, President of the Arizona State Senate; Proposed Intervenor-Defendant; STEVE MONTENEGRO, Speaker of the Arizona House of Representatives; Proposed Intervenor-Defendant,

*Movants - Appellants*.

Appeal from the United States District Court
for the District of Arizona
James Alan Soto, District Judge, Presiding

Argued and Submitted April 14, 2026
Phoenix, Arizona

Filed October 6, 2026

Before: Andrew D. Hurwitz and Roopali H. Desai, Circuit Judges. *

Opinion by Judge Desai

## SUMMARY**


### Equal Protection / Due Process

The panel reversed the district court's summary judgment for plaintiffs and vacated the permanent injunction in plaintiffs' class action alleging that Arizona's birth certificate amendment requirements violate their constitutional rights.

The named plaintiffs, three transgender children in Arizona, represent a class of all transgender individuals born in Arizona, now and in the future, who seek to change the sex listed on their birth certificates but have not undergone a sex change operation. They sued the Director of Arizona's Department of Health Services, asserting a facial challenge to A.R.S. § 36-337(A)(3), which requires the registrar to amend a person's birth certificate if that person provides the registrar a written request for an amended birth certificate and a written statement by a physician that verifies the person underwent a "sex change operation." Plaintiffs


* Judge Graber having recused, in accordance with General Order 3.2(h), this opinion is by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

allege that this "surgical requirement" violates the Equal Protection Clause and Due Process Clause.

The district court granted summary judgment to plaintiffs on all claims and entered a permanent injunction striking the word "operation" from A.R.S. § 36-337(A)(3) and an implementing regulation.

The panel first clarified what the Arizona birth amendment statute provides and concluded that section (A)(4) of the statute, which provides the registrar must amend a birth certificate when she receives a court order ordering an amendment to a birth certificate, operates as a catch-all provision. Based on the plain text, the statute allows anyone to obtain a court order ordering an amendment to the sex marker on their birth certificate without providing proof of a sex change operation.

The panel held that Arizona's birth certificate amendment statute does not violate the Equal Protection Clause. Because the statute does not draw a legislative classification based on transgender status or any other suspect class, the panel applied rational basis review to plaintiffs' facial challenge, and held that it passes constitutional muster. Because the statute provides a method for all people to amend their birth certificates, the panel concluded that the state may rationally require a factfinder to issue a court order in some cases before amending the sex marker.

Addressing plaintiffs' due process claims, the panel held that even assuming the alleged due process rights are fundamental, given the availability of the court order process, plaintiffs' alleged fundamental rights are not burdened in all applications of the statute, and the law thus does not violate the Due Process Clause.

Accordingly, the panel reversed the district court's grant of summary judgment, vacated the permanent injunction, and remanded for further proceedings.

---

**COUNSEL**

Rachel H. Berg (argued) and Kelly J. Popkin, National Center For LGBTQ Rights, Sacramento, California; Patrick J. Hayden, Cooley LLP, New York, New York; Kyle C. Wong, Cooley LLP, San Francisco, California; Mary O'Grady, Colin M. Proksel, and Payslie M. Bowman, Osborn Maledon PA, Phoenix, Arizona; for Plaintiffs-Appellees.

Nathan T. Arrowsmith (argued), Deputy Chief Counsel, Special Litigation Section; Lauren Watford, Assistant Attorney General; Timothy E.D. Horley, Special Assistant Attorney General; Office of the Arizona Attorney General, Phoenix, Arizona; for Defendant-Appellant.

Michael C. Martinich-Sauter (argued) and Justin D. Smith, James Otis Law Group LLC, St. Louis, Missouri, for Movants-Appellants.

Alice W. Yao, Mary Rohmiller, and Dylan N. De Kervor, Potomac Law Group PLLC, Washington, D.C., for Amici Curiae Constitutional Law Scholars.

Elia Herrera and Lauren Greenawalt, Deputy Attorneys General; Virginia Corrigan, Supervising Deputy Attorney General; Michael L. Newman, Senior Assistant Attorney General; Rob Bonta, California Attorney General; Office of the California Attorney General, Los Angeles, California; Julie Moroney and Molly Powell, Assistant Attorneys

General, Complex Litigation Division; Emily Nelson, Assistant Attorney General, Civil Rights Division; Nicholas W. Brown, Washington Attorney General; Office of the Washington Attorney General, Seattle, Washington; Philip J. Weiser, Colorado Attorney General, Office of the Colorado Attorney General, Denver, Colorado; Kwame Raoul, Illinois Attorney General, Office of the Illinois Attorney General, Chicago, Illinois; Andrea J. Campbell, Massachusetts Attorney General, Office of the Massachusetts Attorney General, Boston, Massachusetts; Aaron D. Ford, Nevada Attorney General, Office of the Nevada Attorney General, Carson City, Nevada; Dan Rayfield, Oregon Attorney General, Office of the Oregon Attorney General, Salem, Oregon; Brian L. Schwalb, District of Columbia Attorney General, Office of the District of Columbia Attorney General, Washington, D.C.; Aaron M. Frey, Maine Attorney General, Office of the Maine Attorney General, Augusta, Maine; Keith Ellison, Minnesota Attorney General, Office of the Minnesota Attorney General, St. Paul, Minnesota; Letitia James, New York Attorney General, Office of the New York Attorney General, New York, New York; for Amici Curiae the States of California, Washington, Colorado, District of Columbia, Illinois, Maine, Massachusetts, Minnesota, Nevada, New York, and Oregon.

Angela Y. Wu and Patience Crozier, GLBTQ Legal Advocates & Defenders, Boston, Massachusetts; Kell L. Olson, Lambda Legal Defense and Education Fund Inc., Tucson, Arizona; Charlie Ferguson, Lambda Legal Defense and Education Fund Inc., New York, New York; for Amici Curiae GLBTQ Legal Advocates & Defenders and Lambda Legal Defense and Education Fund, Inc.

## OPINION

DESAI, Circuit Judge:

Transgender people in Arizona sued the Director of Arizona's Department of Health Services ("ADHS") to have the ability to amend the sex marker on their birth certificates without undergoing a sex change operation. But they do not need an injunction from this court to grant them relief; Arizona law allows them to amend the sex marker on their birth certificates without undergoing a sex change operation.

Under Arizona's birth certificate amendment statute, people who have undergone a sex change operation may amend their birth certificates by submitting a written request and a physician's verification of the operation. All other people—including transgender people who have not undergone a sex change operation—may amend their birth certificates by obtaining a court order. Plaintiffs allege that this scheme violates the Equal Protection Clause and the Due Process Clause because obtaining a court order is difficult and expensive. We find no constitutional violation. Because Arizona's birth certificate amendment statute does not discriminate against a suspect class or burden a fundamental right, we apply rational basis review to plaintiffs' facial challenge. And because the law is rationally related to a legitimate government interest, it passes constitutional muster. We thus reverse the district court's summary judgment for the plaintiffs and vacate its permanent injunction.

### Background

The named plaintiffs, three transgender children in Arizona, sued ADHS, alleging that the state's birth

certificate amendment requirements violate their constitutional rights. They challenge A.R.S. § 36-337(A)(3), which requires the registrar to amend a person's birth certificate if that person provides the registrar "a written request for an amended birth certificate," and a written "statement by a physician that verifies" the person underwent a "sex change operation." A.R.S. § 36-337(A)(3). They allege that this "surgical requirement" violates the Equal Protection Clause and Due Process Clause.

The district court certified a class of "[a]ll transgender individuals born in Arizona, now and in the future, who seek to change the sex listed on their birth certificates but have not undergone a 'sex change operation' as treatment for their gender dysphoria." During discovery, the parties agreed—and the district court concluded—that plaintiffs were proceeding with only a facial challenge and abandoned any as-applied challenge.

The district court granted summary judgment to plaintiffs on all claims. On the equal protection claim, the court concluded that the statute discriminates based on transgender status and is thus subject to heightened scrutiny. It held that the law does not satisfy heightened scrutiny because it is not substantially related to an important government interest. On the due process claims, the district court concluded that the law violates plaintiffs' substantive due process rights to individual liberty and autonomy, to make medical decisions, and to informational privacy. Applying strict scrutiny, the district court held that the law violates due process because it is not narrowly tailored to a compelling government interest.

Plaintiffs moved for a permanent injunction. Both parties agreed that a permanent injunction was necessary to

effectuate the district court's holding that the statute is unconstitutional, but they disagreed on the scope of the injunction. The district court adopted the plaintiffs' approach and entered an order striking the word "operation" from § 36-337(A)(3) and an implementing regulation. ADHS timely appealed. After judgment was entered, Arizona's Senate President and Speaker of the House of Representatives ("intervenors") moved to intervene pursuant to Federal Rule of Civil Procedure 24, and the district court granted their motion. The intervenors also timely appealed. We consolidated the two appeals and granted ADHS's motion for a stay pending appeal.

## Standard of Review

We review de novo orders granting summary judgment. *L. F. v. Lake Wash. Sch. Dist. #414*, 947 F.3d 621, 625 (9th Cir. 2020). Summary judgment is proper when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail on a facial challenge, plaintiffs must show that the law "is unconstitutional in all its applications." *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019).

## Analysis

Arizona issues birth certificates to everyone born in the state. A.R.S. § 36-333(A). Birth certificates are critical identity documents, used for identification in school registration, employment, and when obtaining other identity documents such as driver's licenses and passports. Arizona recognizes that birth certificates may require amendment or correction and thus provides a statutory and regulatory scheme to govern the process. *See, e.g.*, A.R.S. § 36-337;

Ariz. Admin. Code R9-19-208 (amendment); A.R.S. § 36-323; Ariz. Admin. Code R9-19-207 (correction).

An amendment is "a change, other than a correction, to a registered [birth] certificate by adding, deleting or substituting information on that certificate." A.R.S. § 36-301(2). The amendment statute lists several circumstances in which the registrar "shall amend" a birth certificate, including when she receives "an adoption certificate or a court order for adoption" or a "voluntary acknowledgment of paternity." A.R.S. § 36-337(A)(1), (2). More relevant here, the registrar must also amend a birth certificate when she receives a "written request" from a person who has undergone a sex change operation and a "written statement by a physician that verifies the sex change operation." A.R.S. § 36-337(A)(3) ("section (A)(3)"). Lastly, the registrar must amend a birth certificate when she receives a "court order ordering an amendment to a birth certificate." *Id.* § 36-337(A)(4) ("section (A)(4)").

A correction is "a change made to a registered certificate because of a typographical error, including misspelling and missing or transposed letters or numbers." A.R.S. § 36-301(6). A physician or hospital administrator can request a correction by submitting a written request "attesting to the validity of the submitted correction." Ariz. Admin. Code R9-19-207(B), (C). Or an individual can request a correction by submitting an "affidavit attesting to the validity of the submitted correction" and "an evidentiary document that includes the specific information to be corrected." *Id.* R9-19-207(D), (E).

Plaintiffs allege that the birth certificate amendment statute and corresponding regulations facially violate the Equal Protection Clause and Due Process Clause. For their

equal protection claim, they argue that the statute discriminates against transgender people and is not substantially related to a legitimate government interest. For their due process claims, they argue that the statute infringes on their rights (1) to be free from unwanted medical procedures, (2) to individual liberty and autonomy, and (3) to informational privacy. Before addressing these constitutional claims, we first clarify what the Arizona statutory scheme actually provides.

## I. Under Arizona law, transgender people can amend the sex marker on their birth certificates without undergoing a "sex change operation."

Plaintiffs raise a facial challenge, meaning "we consider only the text of the statute," and not its application. *See Nguyen v. Bonta*, 140 F.4th 1237, 1240 (9th Cir. 2025) (citation modified). They allege that the statute is unconstitutional because of its "surgical requirement." The premise of plaintiffs' claims is that A.R.S. § 36-337 makes it more difficult—or in some cases, impossible—for transgender people to amend the sex marker on their birth certificates if they have not undergone a sex change operation. But a statutory interpretation question lurks beneath this premise: does the statute allow transgender people who have not undergone a sex change operation to amend the sex marker on their birth certificates by obtaining a court order? The plaintiffs and ADHS agree that section (A)(3) allows people who have undergone a sex change operation to amend through an exclusively administrative process, and section (A)(4) allows transgender people who have not undergone a sex change operation to amend via court order.

The intervenors read the statute differently. They contend that section (A)(3) is the only way that transgender people can amend the sex marker on their birth certificates. In the intervenors' view, transgender people cannot obtain a court order ordering an amendment to their birth certificates without also complying with section (A)(3)'s requirement to undergo a sex change operation. A.R.S. § 36-337(A)(3).

As with all statutory interpretation, we begin with the text. *In re Riggins*, 544 P.3d 64, 67 (Ariz. 2024). When a statute's text is "plain and unambiguous," the text controls and we do not consider "secondary principles of statutory interpretation." *Id.* On the other hand, if the statute is ambiguous, "we consider secondary principles" such as legislative history, the statute's "historical background, its effects and consequences, and its spirit and purpose." *Id.*

We need not look further than the text here because the statute is unambiguous. Section (A)(4) facially allows anyone—including transgender people who have not undergone a sex change operation—to seek a court order "ordering an amendment" to their birth certificate. A.R.S. § 36-337(A)(4). The provision requires the registrar to amend a birth certificate upon receiving a court order ordering an amendment and, unlike other sections of the amendment statute, contains no conditions, additional requirements, or limitations. *Id.* Despite this clear statutory command, the intervenors claim that transgender people cannot invoke section (A)(4) to amend the sex marker on their birth certificates and instead must use section (A)(3), which requires a sex change operation. This interpretation disregards the statutory language, context, and existing precedent in Arizona.

First, the statutory language is clear: section (A)(3) applies to people who have undergone a sex change operation, but section (A)(4) is not so limited. Had the legislature desired to limit the amendments in section (A)(4) to those permitted by sections (A)(1)–(3), it would have said so. *See In re Marriage of McLaughlin & Swanson*, 476 P.3d 336, 338 (Ariz. Ct. App. 2020). And nothing in section (A)(3) suggests that the legislature intended the provision to be the *only* method by which a person can change the sex marker on their birth certificate.[1]

Moreover, section (A)(4) does not condition relief on or otherwise import section (A)(3)'s sex change operation requirement. Indeed, "when the legislature has specifically included a term in some places within a statute and excluded it in other places, courts will not read that term into the sections from which it was excluded." *ACLU of Ariz. v. Ariz. Dep't of Child Safety*, 493 P.3d 885, 890 (Ariz. 2021). We thus have no basis to conclude that section (A)(4) incorporates section (A)(3)'s requirements.

Construing the statutory provisions in context reinforces our conclusion that section (A)(4) operates as a catch-all

---

[1] In light of the unambiguous language of the statute, the intervenors fall back on the legislative history. They point to the House Bill Summary, noting that section (A)(4) is in a section of changes labeled "No Substantial Changes." From this, they extrapolate that the current version does not broadly provide for court-ordered amendments because the previous version of the law did not do so. A.R.S. § 36-326(3) (1967). But even assuming that a summary apparently prepared by House staff is relevant, this strained interpretation would require us to reject the clear, unambiguous language of the statute, which we cannot and will not do. *See Matter of Conservatorship of Chalmers*, 571 P.3d 885, 889 (Ariz. 2025) ("[I]f the language is unambiguous, we do not resort to secondary statutory interpretation principles (such as legislative history).").

provision and does not require a sex change operation. The Arizona Supreme Court has emphasized that "[c]ontext is *always* relevant to statutory interpretation" because it is "essential to avoid rendering other parts of the statutory scheme superfluous." *Matter of Conservatorship of Chalmers*, 571 P.3d 885, 889 (Ariz. 2025). Each section preceding (A)(4) describes a narrow circumstance in which the registrar must amend a birth certificate. But section (A)(4) is broad. Limiting or conditioning its application to the requirements set forth in sections (A)(1), (2), or (3) would make section (A)(4) superfluous. *See Nicaise v. Sundaram*, 432 P.3d 925, 927 (Ariz. 2019) ("[I]f possible, [we] must not interpret a statute in a way that would render a subsection within the statute superfluous."). The legislature's choice to include an expansive catch-all in the statute—immediately following three narrow and specific provisions—must be given effect. *See Riggins*, 544 P.3d at 67 ("A cardinal principle of statutory interpretation is to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous."); *Chalmers*, 571 P.3d at 889 n.2 (courts must "give effect to all of the provisions" in a statute).

The intervenors insist that section (A)(4) cannot operate as a catch-all because it does not grant courts authority to order amendments to birth certificates. But they ignore Arizona law to the contrary. The Arizona Court of Appeals has held that under section (A)(4), courts have the authority to order amendments not expressly contemplated by the other subsections in the statute. *McLaughlin*, 476 P.3d at 338. There, two mothers appealed a trial court's decision ordering that both mothers appear as "parent" on the birth certificate because the trial court believed it "lacked legal authority to order ADHS to amend the birth certificate to

designate both parties as 'mother.'" *Id.* (citation modified). The Court of Appeals reversed, explaining that "courts have the authority and discretion to amend a birth certificate when petitioned to do so and when appropriate in a particular case." *Id.* (citing Ariz. Admin. Code R9-19-208(B)). Thus, the court held in no uncertain terms that section (A)(4) "gives the trial court the authority to order the amendment of the birth certificate." *Id.* (citation modified).

The intervenors ignore *McLaughlin* and ask us to conclude that section (A)(4)'s only function is to direct the registrar to comply with court orders when she receives them. They insist that section (A)(4) applies only when a court is authorized to order an amendment under some other statute. But they cannot point to any other statute granting courts authority to order amendments to birth certificates.[2] Their interpretation would thus render section (A)(4) meaningless. *See Nicaise*, 432 P.3d at 927. Instead, to "give effect to all of the provisions" in the statute, *see Chalmers*, 571 P.3d at 889 n.2 (citation modified), we read section (A)(4) as granting courts broad authority to order amendments to birth certificates "when appropriate in a particular case." *See McLaughlin*, 476 P.3d at 338.

Plaintiffs argue that in practice, some Arizona trial courts have not allowed transgender people to obtain a court order without showing that they have satisfied section (A)(3)'s sex change operation requirement. Indeed, two of the named

---

[2] At oral argument, the intervenors stated that in the context of establishing paternity, the statutory scheme grants courts authority to "adjudge paternity and order the amendment of the birth certificates." Not so. The statutes for contested paternity cases do not address a court's authority to order birth certificate amendments; they address only the court's authority to adjudicate the petition itself. *See* A.R.S. § 25-806.

plaintiffs were apparently denied a court order for that reason. Their mothers testified that the Arizona trial courts denied their requests for a court order because of their view that ADHS would not honor the order without proof of a sex change operation. But we conclude that requiring proof of a sex change operation under section (A)(4)—simply because it is required by section (A)(3)—is improper based on the plain text of the statute. And for a court to decline to issue an order because it predicts that ADHS "wouldn't honor it," is doubly improper. ADHS, a party to this action, correctly takes no such position. The statute leaves no discretion to the agency; it *shall* amend a birth certificate if a court order directs it to do so.[3] A.R.S. § 36-337(A)(4). In any event, plaintiffs' objection on this front fails because this is a facial challenge in which "we consider only the text" of the statute, "not its application." *See Calvary Chapel Bible Fellowship v. Cnty. of Riverside*, 948 F.3d 1172, 1176 (9th Cir. 2020).

At bottom, the statute allows anyone to obtain a court order ordering an amendment to the sex marker on their birth certificate without providing proof of a sex change operation. Arizona trial courts have authority to order amendments under A.R.S. § 36-337(A)(4) "when petitioned to do so and when appropriate in a particular case." *See*

[3] Ten years ago, ADHS took the position that the Superior Court did not have authority to order the agency to amend birth certificates, and the agency would only amend birth certificates pursuant to section (A)(3). ADHS took this position in a 2016 case in which a transgender child obtained a court order ordering an amendment to their name and sex marker on their birth certificate. ADHS refused to comply with the order because the child had not undergone a sex change operation, and the child appealed. In an administrative appeal, the ALJ emphasized that an "agency may not disregard clear statutory directives" and held that ADHS "was required to amend the sex on [the child's] birth certificate." ADHS represents that it has since abandoned that position.

*McLaughlin*, 476 P.3d at 338. And when the registrar is presented with such an order, she must amend the birth certificate. A.R.S. § 36-337(A)(4). With that understanding of the statutory scheme, we turn to plaintiffs' constitutional challenges.

## II. Arizona's birth certificate amendment statute does not violate the Equal Protection Clause.

The Equal Protection Clause commands that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. Plaintiffs first argue that the birth certificate amendment statute violates the Equal Protection Clause because it treats transgender people differently than non-transgender people. For that reason, plaintiffs urge us to apply heightened scrutiny. But the statute does not discriminate based on transgender status or based on any other suspect class. We thus apply rational basis review and conclude that the statute is rationally related to a legitimate government purpose.

### A. The statute does not discriminate based on transgender status.

While some laws are facially neutral, "most legislation classifies for one purpose or another." *Romer v. Evans*, 517 U.S. 620, 631 (1996). But we do not treat all classifications equally; "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Id.* If, on the other hand, the law classifies based on sex or transgender status, we will apply heightened scrutiny and analyze whether the classification is "substantially related" to "important governmental

objectives."[4] *See United States v. Virginia*, 518 U.S. 515, 533 (1996) (sex); *Karnoski v. Trump*, 926 F.3d 1180, 1200–01 (9th Cir. 2019) (transgender status).

To start, section (A)(4) does not classify based on a suspect class. It applies to all people equally; that is, anyone can seek a court order ordering an amendment. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 20 (1973); *United States v. Carrillo-Lopez*, 68 F.4th 1133, 1143 (9th Cir. 2023). Plaintiffs do not argue that section (A)(4), on its face, discriminates against a suspect class.

Plaintiffs focus on section (A)(3). They allege that section (A)(3) classifies based on transgender status because it requires a person amending their birth certificate to undergo a sex change operation. *See* A.R.S. § 36-337(A)(3). Plaintiffs contend that, because sex change operations are closely tied to transgender status, section (A)(3) "discriminates against individuals on the basis of criteria that are almost exclusively indicators of membership in the disfavored group." *See Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013) (citation modified). In other words, plaintiffs argue that the statute causes "proxy discrimination," in which "a law . . . treats individuals differently on the basis of seemingly neutral criteria that are so closely associated with the disfavored group that discrimination on the basis of such criteria is, constructively, facial discrimination against the disfavored group." *Id.*

---

[4] A facially neutral statute may also be subject to heightened scrutiny if enacted with a discriminatory purpose. *See United States v. Carrillo-Lopez*, 68 F.4th 1133, 1139 (9th Cir. 2023). But the parties agree that the law was not enacted with a discriminatory purpose.

Plaintiffs' argument misconstrues both the plain language of the statute and the nature of proxy discrimination. Here, the law does not classify based on transgender status, expressly or by proxy, because it does not condition a benefit on whether a person is transgender. Instead, it allows anyone to amend a birth certificate by obtaining a court order through section (A)(4). And for a smaller group of people who have undergone a sex change operation, the statute allows them to obtain a change through the administrative process under section (A)(3).

Simply put, all transgender people can amend the sex marker on their birth certificates under the statute by obtaining a court order. In addition, some transgender people can amend the sex marker on their birth certificate by submitting a physician statement confirming they have undergone a sex change operation. Thus, the only conceivable classification section (A)(3) draws is based on whether a person has undergone a sex change operation. *See* A.R.S. § 36-337(A)(3). But the mere fact that some group of people—those who have undergone a sex change operation—can obtain relief through section (A)(3) by providing proof of the sex change operation is not a classification based on transgender status in this case. That the statute allows all members of the disfavored class—transgender people—to obtain the desired relief establishes that it does not discriminate on the basis of membership in that group.[5]

[5] The process for making corrections to birth certificates does not render the amendment statute facially discriminatory. That process is available to all people—including transgender people—who seek to correct a "typographical error" on a birth certificate. A.R.S. § 36-301(6).

In sum, the birth certificate amendment statute does not draw a legislative classification based on transgender status or any other suspect class. We thus analyze the statute using rational basis review. *See United States v. Skrmetti*, 605 U.S. 495, 510 (2025).

**B. The birth certificate amendment statute survives rational basis review.**

Under rational basis review, we determine whether the challenged law is "rationally related to a legitimate governmental purpose." *Munoz v. Sullivan*, 930 F.2d 1400, 1404 (9th Cir. 1991). This is not a rigorous test: we ask only whether "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

When we review for a rational basis, a statute "comes to us bearing a strong presumption of validity." *Id.* at 314. Indeed, "those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *Id.* at 315 (citation modified). The record need not contain "legislative facts" explaining the distinction. *See id.* (stating that "whether the conceived reason for the challenged distinction actually motivated the legislature" is "entirely irrelevant"). Ultimately, if we can conceive of a reason for the classification and the plaintiffs cannot negate its rationality, the statute does not violate the Equal Protection Clause. The birth certificate amendment statute clears this low bar.

The Arizona statutory scheme is rationally related to the government's interest in sufficient evidentiary support for a birth certificate amendment. The parties agree that birth certificates are critical identity documents in which the government and citizens have an interest in maintaining

accuracy. At times, amendment is necessary to ensure the accuracy of the birth certificate and "protect the integrity" of the records. The state thus not only has a legitimate interest in providing a process for amendments but ensuring that any requests for amendment are adequately supported. *See* A.R.S. § 36-337(A); Ariz. Admin. Code R9-19-208.

When it comes to amending the sex marker on a birth certificate, the legislature determined that undergoing a sex change operation—and providing proof of that operation to the registrar—is sufficient on its own to prove that an individual requires a change to their birth certificate. A.R.S. § 36-337(A)(3). But there are many other ways for a transgender person to transition that do not include a surgical operation. The parties agree. ADHS, for example, recognizes that social transitioning or transitioning with medication or hormone therapy can effectively allow a transgender person to "align a person's body and lived experience with the person's gender identity." Accordingly, a transgender person could demonstrate without undergoing surgery that "a change . . . by adding, deleting or substituting information on" their birth certificate is warranted. A.R.S. § 36-301(2); *see McLaughlin*, 476 P.3d at 338 (observing that "amend is defined broadly" and trial courts can "order ADHS to use whatever terms [on a birth certificate] the court deems appropriate in the circumstances"). Given that "transition is highly individualized for each person," in these circumstances, a judicial factfinder is better equipped than the administrative agency to confirm that the registrar should "make a change" to the person's sex marker. A.R.S. § 36-301(2); *see also McLaughlin*, 476 P.3d at 338 ("[C]ourts have the . . . discretion to amend a birth certificate when petitioned to do so and when appropriate in a particular case."). On the other hand, it is reasonably conceivable that

obtaining an "invasive" and sometimes "irreversible" procedure to change one's physical sex characteristics does not require a factfinder to further evaluate whether a person's sex marker should be changed. The distinction is thus rational. *See Munoz*, 930 F.2d at 1404 ("Equal protection is not generally thought to require rationality in the abstract, but rather that the classifications the government employs—i.e., the lines it draws among classes of persons—be rational.").

The plaintiffs offer no meaningful rebuttal to this justification. They focus only on attempting to rebut several of the state's other proffered justifications for the law, but we are not limited to the reasons offered by the state. *See Olson v. California*, 104 F.4th 66, 77–78 (9th Cir. 2024) (en banc) ("We may consider any purposes the legislature, litigants, or district court have espoused, but we are not limited to those reasons—we may consider *any* other rational purposes *possibly* motivating enactment of the challenged statute." (citation modified)). Thus, even if some justifications offered by the state and intervenors do not satisfy rational basis review, plaintiffs fail to carry their burden to "negate every conceivable basis which might support" the legislative classification. *See id.* at 77 (citation modified).

We emphasize that our decision hinges on our interpretation of the statute allowing people to amend their sex marker using a court order under section (A)(4). In other words, because section (A)(4) provides a method for all people—including transgender people who have not undergone a sex change operation—to amend their birth certificates, we conclude that the state may rationally require a factfinder to issue a court order in some cases before amending the sex marker.

## III. The birth certificate amendment statute does not violate the Due Process Clause.

The district court also granted summary judgment for plaintiffs on their due process claims. Plaintiffs allege that the statute violates three substantive due process rights: (1) the right to be free from unwanted medical procedures; (2) the right to individual liberty and autonomy; and (3) the right to informational privacy.

The substantive component of the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). On a substantive due process claim, we must determine whether a law infringes on a "fundamental right," and if so, we review the law under strict scrutiny. *See Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 780 (9th Cir. 2014) (en banc). To succeed on a facial due process challenge, the plaintiffs must show that the law is unconstitutional in all its applications. *See id.* Here, even assuming the alleged due process rights are fundamental, the plaintiffs' due process challenges fail because the statute does not burden the fundamental rights in all its applications.

To start, the law does not burden the right to be free from unwanted medical procedures in all applications. The Supreme Court has recognized that under the Due Process Clause, a "competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." *Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990). This right is most often implicated in cases involving physicians administering life-sustaining treatment against a patient's wishes. *See id.* at 279 This case is not comparable. As explained above, section (A)(4) provides a

method to amend the sex marker on a birth certificate that does not require a sex change operation or any other specific medical treatment. A.R.S. § 36-337(A)(4). We cannot conclude that the statute implicates the alleged fundamental right to refuse unwanted medical treatment in all applications when, on its face, it *allows*—indeed, requires—amendment without reference to any specific medical treatment. *See Coons v. Lew*, 762 F.3d 891, 899 (9th Cir. 2014) ("In order to determine whether [a law] . . . implicates [plaintiffs'] rights to medical autonomy, we must examine what the [law] actually requires.").

For similar reasons, the law does not burden the right to individual freedom and autonomy. The Due Process Clause "promises liberty to all within its reach," which includes "rights that allow persons, within a lawful realm, to define and express their identities." *Obergefell v. Hodges*, 576 U.S. 644, 651–52 (2015). Plaintiffs argue that the birth certificate amendment statute impinges on transgender peoples' "right to define who they are and to live autonomously," because it prevents amendment unless a person obtains a sex change operation. Again, this argument ignores the plain text of the statute, which does not require a sex change operation to amend a birth certificate. *See* A.R.S. § 36-337(A)(4). And to the extent that plaintiffs argue that obtaining a court order to amend a birth certificate burdens a fundamental liberty, the argument fails. Given that court orders are regularly required to obtain documentation and state benefits, *see, e.g.*, A.R.S § 36-333.03(A) (delayed birth certificate requires a court order); A.R.S. § 36-336 (adoption court orders), we cannot conclude that this requirement burdens a fundamental right.

Finally, the law does not burden the right to informational privacy. The right to informational privacy protects "the individual interest in avoiding disclosure of

personal matters." *Thorne v. City of El Segundo*, 726 F.2d 459, 468 (9th Cir. 1983). We have held that the government violates this right by, for instance, forcing disclosure of a person's sexual associations as a condition of employment. *Id.* at 468–69. In plaintiffs' view, the same right is implicated here because the law requires them to publicly disclose their transgender status, either (1) by requiring them to use a birth certificate that does not align with their gender identity or (2) by requiring them to disclose in public court proceedings.

The statute does not require transgender people who have not undergone surgery to use a birth certificate that does not align with their gender identity in all its applications. Plaintiffs insist that the statute requires them to regularly present inaccurate birth certificates because they cannot amend their birth certificates without undergoing surgery. But this argument again relies on the premise that we reject. All members of the plaintiff class may avoid unwanted disclosure of their transgender status by obtaining a court order under section (A)(4) amending their birth certificates. *See* A.R.S. § 36-337(A)(4). In other words, "the statute at issue would be constitutional as applied in a large fraction of cases." *Roulette v. City of Seattle*, 97 F.3d 300, 306 (9th Cir. 1996). And when a statute has constitutional applications, plaintiffs necessarily fail to establish a facial due process violation. *See id.* (citing *United States v. Salerno*, 481 U.S. 739, 749–50 (1987)).

Similarly, the statute does not require public disclosure of their transgender status from those seeking a court order to amend their birth certificates. While it is true that court proceedings are ordinarily public, the Arizona Rules of Civil Procedure provide a method to seal court filings. Ariz. R. Civ. P. 5.4. Plaintiffs may be right that they have "no guarantee that a request to seal their records would be

granted" in any individual case, but this is a facial challenge, and plaintiffs cannot show that their informational privacy rights are burdened "in every conceivable application" of the statute. *Simon v. City and Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025); *see also Salerno*, 481 U.S. at 745 (stating that a facial challenge is the "most difficult challenge to mount successfully" because it requires a plaintiff to "establish that no set of circumstances exists under which the [policy] would be valid").

All told, plaintiffs' due process claims rest on a reading of the statute that we reject. Given the availability of the court order process, plaintiffs' alleged fundamental rights are not burdened in all applications of the statute, and the law thus does not violate the Due Process Clause. Summary judgment for the plaintiffs was improper.

**Conclusion**

We reverse the district court's grant of summary judgment, vacate the permanent injunction, and remand for further proceedings.